76143. GATORS OF TIFTON, INC. v. STOKES et al.

(368 SE2d 834)

BIRDSONG, Chief Judge.

Raymond Harrell and his wife are the sole shareholders of the appellant corporation, Gators of Tifton, which has operated as a nightclub since 1983 and at all times pertinent to this action. A complaint alleging a malicious conspiracy to harm this business was filed against the appellees on April 25, 1986; at this time appellee O. L. Stokes was the pastor of the First Assembly of God Church of Tifton, Georgia; appellee Edd Walker was the Sheriff of Tift County, and appellee Hugh E. Smith was Police Chief of Tifton. Extensive discovery was conducted by all parties, including 22 depositions and numerous interrogatories, objections and answers thereto. In April 1987, the appellees filed motion for summary judgment supported by affidavits. This appeal is from the grant of summary judgment to all three appellees.

Appellant's suit was based upon allegations that the three appellees engaged in an unlawful conspiracy on a continuing basis during the years 1984, 1985 and 1986 to damage and destroy the business known as Gators nightclub. However, most of the acts urged as being in furtherance of this conspiracy relate to one incident, when an all-male strip show was presented for a "Ladies' Delight" night at Gators on January 15, 1986. Appellant asserted that prior to this occasion, Gators was the subject of long-term police harassment consisting of posting police cars in the area where the nightclub was located and randomly stopping customers going in and out. The assertions of prior wrongdoing on the part of Reverend Stokes included his presence at the meeting of the Tifton City Commission in 1983 at which Harrell's application for a beer or business license was refused. It was also contended that Reverend Stokes was the "ring leader" of the effort to destroy appellant's business as a "long time opponent of alcohol in Tifton and of sin in general; serving as chairman for 10-20 years of the Social Concerns Committee of the Tiftarea Ministerial Association" and holding a candidates' day at his church for the last 15 or 18 years in order "to elect good candidates and defeat bad ones." Appellant further alleged that in 1986 Reverend Stokes threatened to run him out of business and called Chief Smith to enlist his aid in the harassment tactics, which resulted in a "raid" of Gators

on the night of the "Ladies Delight" strip show.

The undisputed facts as shown by the evidence submitted by appellees presented an altogether different scenario, however. It appears that prior to the January 15, 1986 show, neither the police officers nor sheriff's department had any significant contact with appellant or its customers, and there was no evidence suggesting any harassment. Prior to the all-male strip show, there had been a number of radio advertisements, a large crowd was expected to turn out and rumors of possible disturbances by "jealous husbands and boyfriends" had circulated in the community. This type of entertainment was new to Tifton and Chief Smith did not know what to expect from the crowd, so he directed six police officers to be stationed in and around the nightclub that night. Sheriff Walker became involved when he asked Chief Smith if he needed any extra men and it was agreed that both departments would have officers present in the vicinity at the time of the show in case trouble broke out. Such joint operations were routinely undertaken for high school football games. Approximately ten sheriff's deputies were present for the show, but left before it concluded; the law enforcement personnel were cautioned not to harass Gators' customers, but simply to keep the peace and be present if any trouble broke out. No arrests were made and the show went on as scheduled, playing to a full house. Chief Smith was personally present near the entrance and did not observe any law enforcement harassment of any kind against any customers at the nightclub.

Reverend Stokes became involved when another minister called a meeting of local pastors who were concerned about the proposed all-male strip show. A committee was organized, of which Reverend Stokes was a member, to meet with Harrell to appeal that the show be cancelled. Reverend Stokes told Harrell that he could become a hero in the eyes of the community if he called off the show, and that otherwise the ministers felt they knew the "moral fibre" of the community well enough to predict that the people would not continue to support that type of activity and Gators would be out of business in twelve months. Another minister present at the meeting had been to see an attorney for legal advice on the matter and reported to the committee that it did not appear much could be done, but that it might be good to have law officers present at the show. The ministers also agreed to offer to reimburse Harrell for any lost expenses incurred from cancelling the show by taking up a collection in their churches, but he refused. When Reverend Stokes called Chief Smith to tell him that nothing much could be done about stopping the show and to request that law enforcement officers be present, he was informed that Chief Smith and Sheriff Walker had already planned to be there with extra men. Reverend Stokes and his wife drove by Gators on the evening of the show after a prayer meeting, but stayed

less than five minutes.

All of the appellees swore that they were never aware of, or a part of, any law enforcement or other harassment of appellant's business or its customers during the entire period of time of its operation. Appellant submitted no affidavits to refute this, and none of the interrogatories or depositions which were taken reveals any evidence that a conspiracy existed or could be inferred between any of the appellees. "[T]he law does not authorize a finding that conspiracy exists merely because of some speculative suspicion and while the question of conspiracy is generally one for a jury, the mere fact that conspiracy has been alleged does not require submission of the question to a jury where there is no evidence of record that the alleged conspirators either positively or tacitly came to a mutual understanding to accomplish an unlawful end or to accomplish a lawful end by an unlawful means. [Cit.]" *First Fed. Savings Bank v. Hart*, 185 Ga. App. 304, 305-306 (2) (363 SE2d 832). Accord *Lewis v. Rickenbaker*, 174 Ga. App. 371 (3) (330 SE2d 140).

Furthermore, to establish a cause of action for malicious (or tortious) interference with business relations, the plaintiff must demonstrate that the defendants " '(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.' [Cit.]" *Integrated &c. Systems v. NEC Home Electronics*, 174 Ga. App. 197, 200 (3) (329 SE2d 554); *Nationwide Adv. &c. v. Thompson Recruitment &c.*, 183 Ga. App. 678, 679-680 (1) (359 SE2d 737). Clearly the appellant has not demonstrated that any of these criteria were met. The evidence shows only that a group of ministers approached Harrell to request that he cancel a strip show of a type not previously seen before in their community, even offering to obtain funds from their congregations to reimburse him for the expenses he said he had incurred. A minister who was not a named defendant sought legal advice from an attorney to determine if any legal action could be undertaken. Reverend Stokes called Chief Smith and truthfully reported that the ministerial committee had been advised that not much could be done to prevent the show, but it might be a good idea to have law enforcement officers present. Chief Smith told Reverend Stokes that he and Sheriff Walker had already decided to be present at the performance with extra personnel. Both Chief Smith and Sheriff Walker swore that nothing said or done by Reverend Stokes had anything to do with their decisions, actions or the instructions given to their personnel. Not only did the scheduled performance take place without interruption, it played to a packed house of presumably satisfied customers.

This undisputed evidence pierced the material allegations of ap-

pellant's complaint, refuting any contentions of improper or unlawful actions, malice or interference with other persons of a business relationship on the part of the appellees, and there was no showing of any financial harm suffered by appellant. It follows that all the appellees were entitled as a matter of law to summary judgment in their favor, as granted by the trial court. See *Stipp v. Bailey*, 181 Ga. App. 555 (353 SE2d 52).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 25, 1988.

*Michael E. Garner*, for appellant.

*E. B. Wilkin, Jr., Seymour S. Owens, Michael A. O'Quinn*, for appellees.