A00A0620. ARTZNER et al. v. A & A EXTERMINATORS, INC.
(531 SE2d 200)

ELDRIDGE, Judge.

Alan and Susan Artzner purchased a house from Joseph and Dorothy O'Brien on November 30, 1995. Six days after purchasing the house, the Artzners discovered active termite infestation in the house. On December 30, 1996, the Artzners brought suit against A & A Exterminators, Inc.[1] A & A Exterminators filed a motion for summary judgment. The trial court denied A & A Exterminators' motion for summary judgment on the Artzners' claims for breach of contract/guaranty and professional negligence and granted the motion for summary judgment on the Artzners' claims for fraud, fraudulent concealment, negligent misrepresentation, punitive damages, and OCGA § 13-6-11 attorney fees. The Artzners appeal from the entry of this order.

The Artzners' sole enumeration of error alleges that the trial court erred in granting A & A Exterminators' motion for summary judgment on their claims for fraud, fraudulent concealment, negli-

---

[1] The Artzners also brought suit against Ann Drawbaugh, as executrix of the estates of Joseph and Dorothy O'Brien, based on the termite infestation and for other defects they allege existed on the property. The claims against the O'Briens, however, are not part of this appeal.

gent misrepresentation, punitive damages, and attorney fees.

> On appeal of the grant of summary judgment, this Court applies a de novo review of the evidence to determine whether any question of material fact exists. Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A defendant meets this burden by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. All of the other disputes of fact are rendered immaterial.

(Citations and punctuation omitted.) *Phelps v. BellSouth Advertising &c. Corp.*, 235 Ga. App. 147, 148 (508 SE2d 779) (1998); see also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "[A] grant of summary judgment must be affirmed if it is right for any reason. [Cit.]" *Bob v. Hardy*, 222 Ga. App. 550, 551 (1) (474 SE2d 658) (1996).

Viewed in the light most favorable to the nonmovant, *Lau's Corp. v. Haskins*, supra, the evidence shows the following: On September 24, 1995, the Artzners and the O'Briens entered into a purchase and sale agreement in which the Artzners agreed to purchase the O'Briens' home located at 4347 Collingham Trace, N.E., Marietta, Cobb County. The sales contract required that the O'Briens have the house inspected prior to closing by a licensed pest control operator and to provide at closing a letter stating that the house was free from *visible* evidence of active infestations caused by termites or other wood-destroying organisms. On September 27, 1995, Rusty Alexander, on behalf of A & A Exterminators, performed the inspection at the O'Briens' request. The house was constructed on a slab foundation which limited the scope of the inspection.

On November 6, 1995, N. R. Alexander, on behalf of A & A Exterminators, issued an official Georgia Wood Infestation Report based on the September 27, 1995 inspection. The report indicated that there had been a prior treatment of the house in November 1983. The report further indicated that there had been previous termite infestation but that, at the time of the inspection, there was no active infestation of termites. A graph was attached that showed the areas of the house in which A & A Exterminators found evidence of previous termite infestation.

At the time of closing, the O'Briens had a termite guaranty on the house which was issued by T. P. Alexander on behalf of A & A Termite Control, Inc. A & A Exterminators had assumed the obligations

of A & A Termite Control under the guaranty. The termite guaranty of the O'Briens was for retreatment only. The guaranty stated on its face that it was renewable every year for 19 years after November 1984. The guaranty did not state whether or not it was transferable to any subsequent owners of the house. The first page of the official Georgia Wood Infestation Report stated that the present termite guaranty was not transferable to any subsequent owners of the house.

The Artzners received a copy of the official Georgia Wood Infestation Report at closing and expressed concern about the previous termite infestation. The closing attorney attempted, unsuccessfully, to contact A & A Exterminators. Mr. Artzner testified that he decided to close because the closing attorney told him that the Georgia Wood Infestation Report provided him with coverage for 90 days from the date of the report and because, according to Mr. Artzner, "the house looked like it was in pretty good shape, and [he saw] 1983 in there." Mr. Artzner testified that he understood prior to closing that the 90-day guaranty was for treatment only and did not cover repair.

After the closing, Mr. Artzner contacted his "old" pest control company, which was A & A Termite,[2] and requested that it inspect the house and provide him with a termite "contract." A & A Termite came to the house on December 6, 1995, and found termites in Sheetrock in the corner of one of the bedrooms. Both the Artzners' expert witness and A & A Exterminators' expert witness testified that the existence of an active infestation of termites six days after closing was not proof that the infestation was visible on September 27, 1995, the day of A & A Exterminators' inspection. Both experts, as well as a representative of the Georgia Department of Agriculture, testified that signs of an active termite infestation may *not* be visible one day but may be visible 24 hours later.

Mr. Artzner testified that, prior to closing, he had noticed that the Sheetrock was damaged. When the A & A Termite inspector chipped paint off the wall, live termites were visible. Mr. Artzner further testified the termite tunnels were visible before the paint was chipped off; the tunnels looked "like a groove in the sheetrock." A & A Termite would not provide the Artzners with a new termite "contract" unless the entire house was retreated and all the damage repaired. Several other companies also refused to place the house under a termite "contract" until the entire house was retreated and any damage was repaired.

Mr. Artzner contacted a construction company for a repair esti-

---

[2] A & A Termite is a different company from A & A Termite Control or A & A Exterminators which issued the official Georgia Wood Infestation Report.

mate. The construction company found additional active termite infestation around the front door. Mr. Artzner contacted the Georgia Department of Agriculture, which inspected the house on December 19, 1995. At the time of the Department of Agriculture's inspection, the baseboards had been removed. Active termite infestation was visible. On February 6-7, 1996, A & A Exterminators retreated the areas of the house where active termite infestation was found. Between February 14, 1996 and September 2, 1996, the Artzners continued to find active termite infestation in various areas of the house. A & A Exterminators continued to treat the house at no additional cost. Initially, A & A Exterminators did partial retreatments in the areas where active infestations were found. However, when the outbreaks continued, A & A Exterminators did a treatment of the entire house, which included pulling back the carpets.

Caralee Hagood, a representative of the Department of Agriculture, testified that A & A Exterminators went beyond its regulatory obligations by continuing to treat the Artzners' house after the 90-day period expired. Hagood further testified that under Georgia regulations, A & A Exterminators was not required to report partial retreatments on the official Georgia Wood Infestation Report and that the report was accurate with regard to the findings of prior infestations and treatments. Hagood also testified that the report by A & A Exterminators was one of the better written reports that she had seen. Hagood testified that there was no evidence that the pretreatment in 1983 was done improperly; that A & A Exterminators did an appropriate job in treating the house after it was purchased by the Artzners; that A & A Exterminators was not cited by the Georgia Department of Agriculture as a result of the termite infestation at the Artzners; and that, between 1990, when A & A Exterminators first treated the house for active termite infestation, and the date of her deposition, regulatory action taken by the Georgia Department of Agriculture against A & A Exterminators was within the standard for the industry. Both Hagood and Mr. Artzner testified that the last known active termite infestation in the house was September 1996.

1. The Artzners allege the trial court erred in granting A & A Exterminators' motion for summary judgment on the Artzners' claim for fraud and fraudulent concealment. We disagree.

> The tort of fraud has five elements. These are: (1) false representation by a defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff. In order to survive a motion for summary judgment, plaintiff must show some evidence as to each element.

(Citations omitted.) *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (462 SE2d 154) (1995). Setting aside the question of whether the other elements of fraud are shown, we need focus only on the element of justifiable reliance.

With the element of justifiable reliance, "it is not sufficient to show that false representations were knowingly made with an intent to deceive — there must also be proof that due care was exercised to discover the fraud. [Cit.]" *Todd v. Martinez Paint & Body*, 238 Ga. App. 128-129 (517 SE2d 844) (1999).

In this case, the evidence reflects that the Artzners had a copy of the Georgia Wood Infestation Report indicating previous termite infestation at the time of the closing and a graph, which was attached to the report, that contained a drawing of the house with 16 marks across the front of the house indicating the areas of previous infestation. The front page of the report contained the following language:

> Note: *If visible evidence of active or previous infestation is reported it should be assumed that some degree of damage is present.* . . . Evaluation of damage and any corrective action should be performed by a qualified inspector approved by the purchaser and lending agency.

On the front page, the report further indicated that the report was "not intended to be a structural report" or "a warranty as to absence of wood destroying organisms," and that the report was "subject to all conditions enumerated on the reverse side and [was] issued without warranty or guarantee or except as provided in rule 620-6-.03 of the rules of the Georgia Structural Pest Control Act or subject to any treatment guarantee specified below."

The report further stated on the front page that there were no areas of the structure which were obstructed or inaccessible to the inspector. On the reverse side of the page, however, condition 3 stated that:

> Inspection, including sounding and/or probing, was performed in only those areas, which were readily accessible. Inaccessible areas not inspected include, but are not limited to areas obstructed by floor coverings, wall coverings, siding, fixed ceilings, insulation, furniture, appliances or other personal items.

Additionally, the report also stated on the front page that it was the opinion of the inspector that the conditions prevailing at the time of inspection and/or the nature of the evidence of infestation did not warrant further inspection of the structure by a qualified building

inspector. On the reverse side of the page, however, condition 7 stated that:

> This is not a structural report. A wood destroying organism inspector is not ordinarily a construction or building trade expert and is therefore not expected to assess structural soundness. Evaluation and correction of damage which may have resulted from an active or previous infestation should be performed by a qualified inspector in the building trade, who is approved by the purchaser and the lending agency.

Both Mr. and Mrs. Artzner testified that they had visited the property at least five times prior to closing and that they had an independent house inspection performed by Frank Barron of A to Z Home Inspections. They both testified they had noticed the damaged Sheetrock in the bedroom where, after closing, the active termite infestation was initially found and that they did not inspect the damaged area or question anyone about the damage because they assumed it was caused by Mr. O'Brien's walker. Mr. Artzner testified that, when he examined the wall several weeks after closing, the termite tunnels in the bedroom Sheetrock were visible without chipping the paint away. Further, Mr. Artzner testified that he noticed cracks in the garage Sheetrock prior to closing, but he did not inspect the Sheetrock because he thought the cracks were caused by poorly applied Sheetrock tape; termites were found in the garage walls after the closing. Mr. and Mrs. Artzner testified that, prior to closing on the house, they were aware that the existing guaranty the O'Briens had on the house was for treatment only and did not cover repairs caused by termite damage; that the O'Briens' guaranty was not transferable to them; and that they did not ask for the closing to be postponed to allow them to have the house further inspected.

"The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity." (Citations omitted.) *Howard v. McFarland*, 237 Ga. App. 483, 484 (515 SE2d 629) (1999). Under the undisputed facts of this case, the Artzners' lack of due diligence bars their recovery for fraud and fraudulent concealment as a matter of law.

2. The Artzners' claim against A & A Exterminators for negligent misrepresentation must fail for the same reason, i.e., lack of due diligence.

> As the same principles apply to both fraud and negligent misrepresentation (*Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681 (300 SE2d 503) [(1983)]; *American Legion v. Foote & Davies, Inc.*, 193 Ga. App. 225,

227 (387 SE2d 380) [(1989)]), justifiable reliance is also an essential element of a claim asserting negligent misrepresentation. Therefore, [the Artzners'] failure to exercise due diligence, as a matter of law, also bars [their] negligent misrepresentation claim. [Cit.]

*Real Estate Intl. v. Buggay*, 220 Ga. App. 449, 452 (469 SE2d 242) (1996). See also *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 795 (359 SE2d 920) (1987); *Howard v. McFarland*, supra at 485. Accordingly, A & A Exterminators was entitled to summary judgment on the negligent misrepresentation claim.

3. The Artzners allege the trial court erred in granting summary judgment to A & A Exterminators on their claim for punitive damages.

"While the imposition of punitive damages is ordinarily a jury issue, the controlling criteri[on] is whether there is any evidence authorizing such an award. [Cit.]" *Evans v. Willis*, 212 Ga. App. 335, 338 (441 SE2d 770) (1994).

> Punitive damages may be awarded only in such tort actions in which it is proven *by clear and convincing evidence* that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

(Emphasis supplied.) OCGA § 51-12-5.1 (b). "Mere negligence, although gross, will not alone authorize the recovery of punitive damages. [Cit.]" (Punctuation omitted.) *Petrolane Gas Svcs. v. Eusery*, 193 Ga. App. 860, 861 (1) (389 SE2d 355) (1989). "There must be circumstances of aggravation or outrage." (Citations and punctuation omitted.) *Tri-County Investment Group v. Southern States*, 231 Ga. App. 632, 638 (500 SE2d 22) (1998).

> If a tort is committed through mistake, ignorance, or mere negligence, the damages are limited to the actual injury received, for vindictive or punitive damages are recoverable only when a defendant acts maliciously, wilfully, or with a wanton disregard of the rights of others. It is not essential to a recovery for punitive damages that the person inflicting the damages was guilty of wilful and intentional misconduct. It is sufficient that the act be done under such circumstances as evinces an entire want of care and a conscious indifference to the consequences.

(Citations and punctuation omitted.) *Roseberry v. Brooks*, 218 Ga.

App. 202, 209-210 (461 SE2d 262) (1995).

In this case, there is no indication that at trial, plaintiffs could carry their higher burden of proof by showing clear and convincing evidence that any of the actions of A & A Exterminators were such as to evince an entire want of care and a conscious indifference to the consequences. Accordingly, the trial court properly granted summary judgment to A & A Exterminators on its claim for punitive damages.

4. Additionally, the Artzners allege that the trial court erred in granting summary judgment to A & A Exterminators on the Artzners' claim for OCGA § 13-6-11 attorney fees. We agree.

OCGA § 13-6-11 attorney fees are recoverable where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." OCGA § 13-6-11. Attorney fees are not authorized under OCGA § 13-6-11 if the evidence shows that a genuine dispute exists, except in a case where bad faith is shown. *Fuel South v. Metz*, 217 Ga. App. 731, 732-733 (458 SE2d 904) (1995). Hence, the issue this Court must decide is whether there is any evidence from which a jury could find that A & A Exterminators acted in bad faith. The term bad faith as used in OCGA § 13-6-11 "clearly encompasses misconduct other than fraud." *Towery v. Massey*, 179 Ga. App. 61, 65 (345 SE2d 90) (1986).

> It is well settled that the bad faith contemplated by OCGA § 13-6-11 is bad faith connected with the transaction and dealing out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen.

(Citations and punctuation omitted.) *Smith v. Stuckey*, 233 Ga. App. 103, 107 (503 SE2d 284) (1998).

In motions for summary judgment, a defendant, as the movant, can prevail by showing that no jury issue exists regarding an essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, supra. However, the plaintiff, as the nonmovant,

> will survive summary judgment by presenting *any* evidence which establishes a jury issue regarding that element. Even slight evidence will be sufficient to satisfy the plaintiff's burden of production of some evidence on a motion for summary judgment; such evidence may include favorable inferences drawn by the court from the evidence presented.

(Citations omitted; emphasis in original.) *Garrett v. NationsBank*, 228 Ga. App. 114, 115-116 (491 SE2d 158) (1997). In this case, we are persuaded that the Artzners presented some evidence of bad faith to raise a jury issue on such conduct.

The house was originally treated for termites during construction in November 1983 by A & A Termite Control. In 1988, A & A Termite Control ceased to do business, and Alexander, who owned a half-interest in the company, formed A & A Exterminators. A & A Exterminators assumed the obligations of A & A Termite Control under the guaranty. While the O'Briens' termite guaranty did not state whether it was transferable to any subsequent owners of the property, it did state that it was renewable for 19 additional years from the November 10, 1984 inception date, provided the annual renewal premium was timely paid. The official Georgia Wood Infestation Report provided to the O'Briens in 1985 when they purchased the house showed no active or previous infestation of termites and showed that the guaranty held by the previous owner was transferable to any subsequent owner of the property upon payment of a fee on or before the expiration date. Numerous treatments were made by A & A Exterminators for termites between 1990 and 1995; the last treatment for termites prior to the purchase of the house by the Artzners was in March 1995, only six months prior to the September 27, 1995 inspection. Under this set of facts, there is some evidence from which a jury could determine that A & A Exterminators acted in bad faith when it refused to transfer the existing guaranty, which was renewable for an additional eight years, to the Artzners. Therefore, it was error for the trial court to grant summary judgment to A & A Exterminators on the Artzners' claim for bad faith attorney fees under OCGA § 13-6-11.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 14, 2000 — 

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, Carol V. Clark, Peter L. Lublin,* for appellants.

*Lokey & Smith, G. Melton Mobley,* for appellee.