A02A0040. POTTS et al. v. UAP-GA AG CHEM, INC. et al.
(567 SE2d 316)

MILLER, Judge.

An employer falsely told an employee's treating physician that the employee had not been exposed to toxic chemicals. Combined with the negative results of certain blood tests and the length of time the employee had already been receiving antidotal treatment, this information led the physician to lessen the toxic chemical antidote being administered to the employee, even though the employee and his family adamantly maintained that the exposure had occurred. As a result of this lack of treatment, the employee died, and his estate and widow sued the employer for fraud. The primary question on appeal is whether a jury could find that the physician's reliance on

the employer's false statement was reasonable. We hold that a jury could so find and therefore reverse this portion of the summary judgment granted to the employer.

This is the third time this case has generated an appellate opinion. The first appeal focused on whether the employer was immune from this suit under the Workers' Compensation Act. In *Potts v. UAP-GA AG CHEM*, 227 Ga. App. 841 (490 SE2d 432) (1997) (*"Potts I"*), this Court held that the employer was immune. The Supreme Court of Georgia reversed this ruling in *Potts v. UAP-GA. AG. CHEM.*, 270 Ga. 14 (506 SE2d 101) (1998) (*"Potts II"*). On remand, the trial court again entered summary judgment in favor of the defendants, this time on grounds that essential elements of the asserted torts were missing. We will recount only those facts (as construed in favor of the plaintiffs) necessary to determine this appeal.

Rusty LeBlanc became ill after cleaning chemicals from applicators for his employer, UAP-GA AG CHEM, Inc. During stays at two hospitals, LeBlanc maintained to his treating physicians that the cause of his malady was the chemicals, and thus he was treated for chemical poisoning and for other possible conditions. At the second hospital, Dr. Capps administered the chemical poison antidote Atropine subcutaneously, which he discontinued after being assured by UAP's branch manager that LeBlanc could not possibly have been exposed to any chemicals, and after receiving blood test results showing LeBlanc's cholinesterase level to be in the normal range. (Poisoning by these chemicals would have produced abnormally low levels of cholinesterase.) Contradicting his employer's statements, LeBlanc repeated to Dr. Capps that he had been exposed to the chemicals. The doctor kept LeBlanc on some oral antidotal drugs. LeBlanc soon died. An expert has indirectly opined that the cessation of the Atropine treatment (caused in part by the employer's false statement that LeBlanc had not been exposed to chemicals) resulted in the death.

LeBlanc's estate (through its administrator Potts) and his widow (on behalf of herself and LeBlanc's minor child) brought this wrongful death and survival action against UAP and its branch manager, alleging fraud. They also sued Canaan Industries (the manufacturer of the applicators) and Dowelanco (the manufacturer of the chemicals and the party that financed UAP's purchase of the applicators from Canaan). Plaintiffs alleged that Canaan and Dowelanco should have placed a warning on the applicators regarding the danger of cleaning off chemicals. Plaintiffs have since dismissed Canaan.

As noted above, UAP and its branch manager's first attempt at summary judgment on grounds of workers' compensation immunity was ultimately unsuccessful. See *Potts II*, supra, 270 Ga. at 17. UAP and its branch manager then moved for summary judgment on grounds that the evidence did not support a claim for fraud, which

the trial court denied. Although the court certified the matter for immediate review, UAP did not pursue the appeal since plaintiffs amended their complaint at that time to add a claim for intentional infliction of emotional distress. UAP moved a third time for summary judgment, asserting that no evidence supported essential elements of either the fraud or the intentional infliction of emotional distress claim. Dowelanco also moved for summary judgment, arguing among other things that it did not supply Canaan with the applicators nor did it know of any defects in the applicators.

The trial court granted all motions for summary judgment, ending the case. In their appeal, plaintiffs assert the trial court erred in the following four respects: (1) finding as a matter of law that Dr. Capps did not exercise due diligence, (2) concluding that the "law of the case" doctrine did not foreclose reviewing the issues raised in UAP's third motion for summary judgment, (3) holding that the branch manager's conduct toward LeBlanc did not constitute intentional infliction of emotional distress, and (4) concluding that Dowelanco did not have a duty to warn about the applicators.

1. The fraud cause of action against UAP and its branch manager rests on the following premises. The branch manager knowingly misrepresented to Dr. Capps that there was no way LeBlanc was exposed to chemicals, and this misrepresentation was made with the intent to cause the physician to act upon this information. Reasonably relying upon this misrepresentation, Dr. Capps changed the medical treatment of LeBlanc to LeBlanc's detriment, resulting in LeBlanc's death. The trial court found that evidence supported all of these elements except the reasonable reliance element. The court concluded that Dr. Capps could not reasonably rely on the branch manager's statements since they were directly contradicted by the patient LeBlanc. On appeal, UAP maintains that not only was the trial court correct in finding no reasonable reliance by Dr. Capps, but also that the claim fails since the misrepresentation was not made to *LeBlanc* and since *LeBlanc* did not rely on the statement but rather contradicted it.

The five classic elements of fraud are (1) false representation by a defendant, (2) scienter, (3) intent to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by the plaintiff, and (5) resulting damage to the plaintiff. *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 769 (1) (531 SE2d 200) (2000). However, the Supreme Court of Georgia has held that the misrepresentation need not be to the plaintiff, but may be to someone on whom the plaintiff relies. "We hold that the requirement of reliance is satisfied where . . . A, having as his objective to defraud C, and knowing that C will rely upon B, fraudulently induces B to act in some manner on which C relies, and whereby A's purpose of defrauding C is accomplished."

*Florida Rock & Tank Lines v. Moore*, 258 Ga. 106, 107 (4) (365 SE2d 836) (1988).

Here the misrepresentation was to LeBlanc's physician, on whom LeBlanc was relying for treatment. Through the misrepresentation, UAP induced the physician to discount the possibility of chemical poisoning and to change LeBlanc's treatment, on which treatment LeBlanc was relying for his physical recovery. UAP's ultimate purpose of seeking to deny responsibility for the malady was advanced. Even though LeBlanc himself did not rely on the misrepresentation, his treating physician to whom he had entrusted his care did. Thus, UAP induced the physician "to act in some manner on which [LeBlanc] relies" (*Moore*, supra, 258 Ga. at 107 (4)), i.e., LeBlanc relied on his physician's judgment in making the correct decision on how to treat him, and in giving that treatment the physician acted in reliance on UAP's misrepresentation. Where a person (as here) is entrusted with discretion in caring for plaintiff's interests, a misrepresentation to that person — even if the plaintiff knows it to be false — may be the basis for a fraud action where the person in reasonably relying upon the misrepresentation acts to harm plaintiff's interests. The fact that the plaintiff tells the person that the misrepresentation is false is simply one factor in determining whether that person reasonably relied upon the misrepresentation. Whether reliance is reasonable is normally a question for the jury and should not be decided on summary judgment if there is any evidence showing the person exercised due diligence. *Riviera Finance v. McBride*, 221 Ga. App. 321, 323 (471 SE2d 233) (1996); see *Brown v. Mann*, 237 Ga. App. 247, 249-250 (1) (b) (514 SE2d 922) (1999); *King v. Towns*, 102 Ga. App. 895, 901 (2) (118 SE2d 121) (1960).

Here the evidence showed that at the time Dr. Capps received UAP's false information that LeBlanc had not been exposed to chemicals, Dr. Capps had also just received some blood test results showing LeBlanc's cholinesterase level to be within the normal range, which also discounted the possibility of chemical poisoning. Since the evidence revealed that toxic chemical experiences are normally short-lived and since LeBlanc had been receiving Atropine for three days, Dr. Capps could understandably have become less concerned about chemical poisoning, despite his patient's claims to the contrary. A jury could find that the doctor exercised due diligence and reasonably relied on the misrepresentation in deciding to change his treatment of LeBlanc by taking him off Atropine and by not investigating the chemicals further, particularly where the doctor continued to treat LeBlanc with an oral form of a milder antidote.

Thus, the trial court erred in holding as a matter of law that Dr. Capps could not reasonably rely on the misrepresentation. Cf. *Akins v. Couch*, 271 Ga. 276, 278-279 (3) (b) (518 SE2d 674) (1999). We

reverse summary judgment on the fraud claim against UAP and its branch manager.

2. Plaintiffs argue that the trial court should have refused to consider the third motion for summary judgment on the ground that the earlier appeal of the case had already determined that the evidence supported the elements necessary to the fraud and intentional infliction of emotional distress claims. Plaintiffs point to OCGA § 9-11-60 (h), which provides that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court. . . ."

Inasmuch as we held in Division 1 that some evidence supports the elements of the fraud claim, plaintiffs' argument as to that claim is moot. With regard to the claim for intentional infliction of emotional distress, the argument is inapplicable since in the earlier appeal neither this Court nor the Supreme Court addressed whether evidence supported that claim (or, for that matter, the fraud claim). See *Potts II*, supra, 270 Ga. at 15-17; *Potts I*, supra, 227 Ga. App. at 844 (2). "[W]hen a new issue not previously addressed by an appellate court is properly raised . . ." in a subsequent proceeding, the law of the case rule in OCGA § 9-11-60 (h) does not preclude consideration of that issue. *Lowman v. Advanced Drainage Systems*, 228 Ga. App. 182, 183-184 (491 SE2d 427) (1997). Indeed, plaintiffs did not amend their complaint to include the intentional infliction of emotional distress claim until *after* the previous two appellate decisions, which change in evidentiary posture necessarily rendered the law of the case rule inapplicable to that claim. *May v. Macioce*, 200 Ga. App. 542, 544 (2) (409 SE2d 45) (1991).

3. The evidence does not support key elements of plaintiffs' claim for intentional infliction of emotional distress. The basis for this claim is two statements: the misrepresentation to Dr. Capps about LeBlanc not being exposed to chemicals, and a statement by UAP's branch manager to LeBlanc in the hospital that LeBlanc had no workers' compensation claim. Neither statement meets the requisite criteria.

The first statement was not made to LeBlanc but to his physician. " '[E]ven malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff.' [Cit.]" *Lively v. McDaniel*, 240 Ga. App. 132, 134 (2) (522 SE2d 711) (1999); see *Jackson v. Nationwide Credit*, 206 Ga. App. 810, 811 (2) (426 SE2d 630) (1992). The second statement that LeBlanc had no workers' compensation claim does not rise to the level of outrageousness required to sustain a claim for the intentional infliction of emotional distress. "It must be emphasized that major outrage in the language or conduct complained of is essential to the tort." (Punctuation omitted.) *Bridges v. Winn-Dixie At-*

*lanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985). Thus, critical comments by an employer to its employee, even though belittling, rude, and given at a poor time when the employee is very vulnerable, do not make the employer liable for this tort. *Jarrard v. United Parcel Svc.*, 242 Ga. App. 58, 60 (529 SE2d 144) (2000). *Jarrard* explained:

> [T]he conduct must inherently have an element of outrageousness or extreme wrongfulness. Based on this reasoning, we have repeatedly upheld summary adjudications in favor of the defendant where the conduct had no such element, even though the defendant — who had a controlling relationship over the plaintiff — was aware of the plaintiff's delicate mental condition at the time of the incident.

(Footnote omitted.) Id. at 61.

Here UAP's statement that LeBlanc had no workers' compensation claim was not inherently outrageous. Rather, such a position taken by an employer is a common everyday occurrence in the business world of negotiations, *even if motivated by malice or an intent to harm plaintiff.* It is not enough that defendant acted with bad faith, criminal intent, malice, or even the degree of aggravation that would entitle plaintiff to punitive damages; liability for intentional infliction of emotional distress arises *only* where the conduct innately was extreme and outrageous. *Jarrard*, supra, 242 Ga. App. at 61; see *Bowers v. Estep*, 204 Ga. App. 615, 618 (2) (420 SE2d 336) (1992). Taking an unreasonable position that LeBlanc was not entitled to workers' compensation and announcing that position to him while he lay in a hospital bed may have been inconsiderate, malicious, wrongheaded, and completely insensitive. It certainly should not be condoned in the business world; however, it was not inherently extreme and outrageous as is required for a claim for intentional infliction of emotional distress. See *Jarrard*, supra, 242 Ga. App. at 61.

The court did not err in granting summary judgment on this claim.

4. Nor did the court err in entering summary judgment on the "failure to warn" claim against Dowelanco. This claim arises when one who supplies a chattel for use by another knows or should realize that the chattel is or is likely to be dangerous for the use for which it is supplied and fails to exercise reasonable care to warn the user of its dangerous condition. *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 702 (2) (294 SE2d 541) (1982); see *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994). Such suppliers have included manufacturers, retailers, sellers, and distributors of the chattel. See *Chrysler Corp.*, supra, 264 Ga. at 724 (1) (manufactur-

ers); *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353, 354 (1) (498 SE2d 583) (1998) (distributors); *Greenway*, supra, 163 Ga. App. at 702 (2) (manufacturers and sellers); *Beam v. Omark Indus.*, 143 Ga. App. 142, 145 (1) (b) (237 SE2d 607) (1977) (manufacturers and retailers). Such would *not* normally include financiers of the chattel, as financiers generally do not handle, possess, or inspect the product and therefore do not have the opportunity to discover any dangerous defects therein or to post a warning thereon. See *Bickram v. Case I. H.*, 712 FSupp. 18, 22-23 (E.D. N.Y. 1989); see also *Draleau v. Center Capital Corp.*, 49 Mass. App. Ct. 783, 787-788 (732 NE2d 929) (2000); *Wynn v. Kensington Mtg. &c. Corp.*, 697 SW2d 47, 49 (Tex. App. 1985); see generally Anno., Products Liability: Application of Strict Liability in Tort Doctrine to Agency Merely Financing Sale or Lease-Purchase of Personal Property, 28 ALR4th 326 (2001).

Here the undisputed evidence shows that Dowelanco was a "hands off" financier. Dowelanco, which did not design or manufacture the applicators, simply provided a credit to UAP and other purchasers of Dowelanco's chemical product, which credit could be used to purchase an applicator from Canaan. Using this credit, UAP purchased the applicators in question from Canaan directly, without Dowelanco ever touching, handling, inspecting, or possessing them. Since Dowelanco did not supply the applicators to UAP, Dowelanco was not obligated to provide UAP with any warnings about the product.

Moreover, the undisputed evidence showed that Dowelanco had no actual or constructive knowledge of any defects in the applicators. Absent such, a duty to warn did not arise. See *Farmer*, supra, 231 Ga. App. at 354 (1); *Hester v. Human*, 211 Ga. App. 351, 353 (3) (439 SE2d 50) (1993).

The trial court correctly granted summary judgment to Dowelanco on the "failure to warn" claim.

*Judgment affirmed in part and reversed in part. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 13, 2002 —
RECONSIDERATION DENIED JUNE 27, 2002 ▮

*John M. Brown, Stephen L. Ivie*, for appellants.
*King & Spalding, J. Kevin Buster, Carmen R. Toledo, Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat*, for appellees.