A03A1371. TRAUB v. WASHINGTON et al.
A03A1400, A03A1576. CONNOR v. TRAUB (two cases).
A03A1429. WASHINGTON v. TRAUB.
(591 SE2d 382)

JOHNSON, Presiding Judge.

Sandra Traub sued her brother, Glenn Connor, for fraud, conspiracy, intentional infliction of emotional distress, and breach of his fiduciary duties as co-executor of their mother's estate. Traub also brought those causes of action and a claim of legal malpractice against Grant Washington, the attorney who represented Traub and Connor as co-executors, as well as attorney Richard Metz, whose assistance Washington enlisted in various debt collection matters involving Traub. Traub, Connor, and Washington filed these appeals and cross-appeals based on the trial court's rulings on the parties' motions for summary judgment; those motions and rulings will be discussed more fully below.

The record shows the following: After their mother died in July 1997, Traub and Connor decided to hire an attorney to gain access to their mother's will, which was in a safe deposit box to which only their mother had access. Connor suggested hiring Washington, an

---

attorney whom he knew from church and had consulted about legal matters for six or seven years. When they met with Washington, Traub told him that she and Connor were estranged and voiced her concerns about potential conflicts of interest, given Washington's prior relationship with Connor. Traub had told Connor that she would prefer to hire an attorney whom neither party knew, and even asked Washington if she and Connor needed two attorneys. Washington replied that they did not, and that "that could get expensive." Connor and Washington assured Traub that Washington could represent them equally and fairly and that there was no conflict of interest. Connor and Traub agreed to hire Washington. In the course of the representation, Traub gave Washington some of her personal and financial information.

Connor and Traub were named as co-executors under the will and were appointed as such by the probate court. They were also, along with another sibling, equal beneficiaries of the estate. Connor and Traub disagreed about handling the estate. For instance, disputes arose regarding the need to inventory personal property of the estate, the distribution of stock proceeds, and the payment of estate taxes. Traub believed Washington was privately communicating with Connor. Connor allowed Washington to visit the mother's home, a decision with which Traub disagreed. Believing a conflict of interest had arisen, Traub faxed Washington a letter stating that she, as co-executor, would no longer authorize the payment to him of any additional legal fees for his representation of the estate.

After receiving the facsimile, Washington met with Connor and told him he did not see any conflict of interest and agreed to represent Connor alone. Washington sent a letter to Traub saying he interpreted her letter as an attempt to dismiss him as attorney for the estate, but that Connor expressed his desire to continue to have Washington's assistance in the disposition of the estate. Washington stated that if Traub was not inclined to assist in the "expeditious handling of the estate," he, on behalf of Connor, "would encourage [her] to resign" as co-executor; if she did not, she should be prepared to be served with a petition to be removed from her role as co-executor. Washington then petitioned for Traub's removal, and she petitioned for Connor's removal.

While they were still co-executors, Connor authorized Washington to search public records to determine whether any judgments or liens had been filed against Traub. Connor was concerned that Traub's creditors could reach his assets. Connor also gave Washington a document he found at the mother's house indicating that his mother or Traub or both possibly owed a man named Robert Hunter $40,000 or $100,000. On behalf of Connor, Washington called Hunter to determine the validity of the debt. In spite of his former represen-

tation of Traub as co-executor, Washington represented Hunter in an action against Traub to collect the debt. After winning a judgment against Traub, Washington filed a garnishment to collect the debt from Traub's portion of the estate.

Washington also engaged Metz, an attorney with whom he shared office space, to investigate Traub's debts. At least one of the executions Metz found resulted in the filing of a garnishment action against Traub's estate assets in which Metz represented the creditor and Washington represented Connor.

Traub filed the underlying action against Washington, Metz, and Connor. The trial court granted summary judgment to Metz on all counts, and summary judgment to Washington and Connor on Traub's claim for intentional infliction of emotional distress. The court denied Connor's motion for summary judgment on Traub's claims of fraud, conspiracy, and breach of fiduciary duty. It denied Washington's motion for summary judgment on Traub's claims of fraud, conspiracy, legal malpractice, and breach of fiduciary duty.

In Case No. A03A1429, Washington appeals from the trial court's denial of his motion for summary judgment on Traub's claims for legal malpractice, breach of fiduciary duty, fraud, and civil conspiracy. In Case No. A03A1371, Traub appeals from the grant of summary judgment to Metz on her claims for breach of fiduciary duty and legal malpractice. In Case No. A03A1576, Connor files a cross-appeal from the denial of his motion for summary judgment on Traub's fraud, civil conspiracy, and breach of fiduciary duty claims. In Case No. A03A1400, Connor files an interlocutory appeal from the denial of his motion for summary judgment on claims of breach of fiduciary duty, civil conspiracy, and fraud, raising the same arguments he raises in his cross-appeal.

## Case No. A03A1429

1. Washington contends he was entitled to summary judgment on Traub's legal malpractice claim, arguing there is no evidence that he breached a legal duty to Traub, no evidence that he used confidential information to her detriment, and no evidence that Traub was damaged because of his acts or omissions.

Washington contends that Traub's claim of malpractice is based solely on a breach of ethical duties, not on any act of negligence. Although the violation of a professional ethical standard, standing alone, cannot serve as a basis for a legal malpractice action,[1] state

---

[1] *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992).

bar rules are relevant to the standard of care in a legal malpractice action.[2]

Here, Traub's expert did not merely opine that Washington violated a professional ethical standard. To the contrary, the affidavit shows that the expert set forth the conduct on Washington's part that allegedly constituted professional malpractice — including continuing to represent Connor after conflicts arose and taking action adverse to Traub to gain an advantage for Connor.[3] We note that Washington undertook representation of both parties, after Traub told him she was uncomfortable having him represent her given his relationship with Connor, from whom she was estranged.

Moreover, there was evidence that Washington used confidential information gained in the process of representing Traub to her detriment. And, as discussed in Division 3, below, there was evidence that Traub was damaged as a result of Washington's actions. A jury issue exists as to whether Washington committed legal malpractice. Therefore, Washington was not entitled to summary judgment on the legal malpractice claim.

2. Washington urges that he was entitled to summary judgment on the breach of fiduciary duty claim. According to Washington, Traub's breach of fiduciary duty claim was merely duplicative of her legal malpractice claim, and it fails for the same reasons the malpractice claim fails. As we held above, however, a jury issue exists as to whether Washington committed legal malpractice. And, Traub had the right to plead alternative theories.[4] This enumeration is without merit.

3. Washington claims he was entitled to summary judgment on the fraud claim because Traub presented no evidence that she was damaged by any act or omission on Washington's part.[5] Washington adds that Traub was not damaged by merely having to pay certain debts that she legally owed.

But Traub argues that the creditors were not pursuing her until Washington gained information through representing Traub and Connor, and then contacted and represented Hunter, and requested assistance from Metz in collecting the debts. And Washington peti-

---

[2] *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 376 (2) (a) (453 SE2d 719) (1995).

[3] See *Peters v. Hyatt Legal Svcs.*, 220 Ga. App. 398 (469 SE2d 481) (1996), in which this Court affirmed the plaintiff's verdict in a legal malpractice case arising from dual representation and conflict of interest and in which this Court held that "evidence of even a potential conflict of interest is sufficient to raise a jury issue on punitive damages in a legal malpractice case." Id. at 401 (1) (b).

[4] See *Southern v. Sphere-Drake Ins. Co.*, 226 Ga. App. 450, 451 (486 SE2d 674) (1997).

[5] See generally *Zampatti v. Tradebank Intl. &c. Corp.*, 235 Ga. App. 333, 341 (7) (508 SE2d 750) (1998) (setting forth elements of fraud).

tioned to remove Traub as co-executor, resulting in a loss of commissions for Traub. The existence of fraud may be shown by slight circumstances.[6] Washington was not entitled to summary judgment on the fraud claim.

4. Washington argues that the conspiracy count fails because there is no underlying tort. But given that there is evidence from which a jury could find an underlying tort, such as fraud, Washington was not entitled to summary judgment on this claim.

## Case No. A03A1371

5. Traub contends the trial court erred in granting summary judgment to Metz on her breach of fiduciary duty and legal malpractice claims. Metz claimed he was entitled to summary judgment on the fiduciary duty claim because he had not been retained as her attorney and there was no evidence of a fiduciary relationship between him and Traub. On appeal, Traub urges that Washington violated the code of professional responsibility and committed fraud in order to deprive her of her inheritance. Metz aided and abetted Washington "in a sort of association or joint venture," and, Traub argues, Metz is vicariously liable for Washington's actions.

Traub admits in her brief that "Metz himself had no direct relationship with Traub," and that any liability on Metz's part would have to be in conjunction with Washington or based upon vicarious liability. Traub raises the vicarious liability argument for the first time on appeal, so it has not been preserved for review.[7]

To the extent Traub's argument was preserved, it is without merit. The evidence shows that Metz did not work for Traub, and that Metz and Washington were not partners. Metz contends he only rented space from Washington and that he checked the records as a gratuitous favor for Washington. There is no evidence that Metz knew that Washington formerly represented Traub and knew or should have known that Washington may have had a conflict of interest in representing Connor or Hunter. Without that knowledge, Metz could not have conspired or aided and abetted Washington to exploit that conflict to Traub's disadvantage.[8] The direct evidence shows that Metz did not know of Washington's previous representation of Traub or the estate. The trial court did not err in granting summary judg-

---

[6] See OCGA § 23-2-57.

[7] See generally *Johnson v. First Union Nat. Bank*, 255 Ga. App. 819, 820-821 (1) (567 SE2d 44) (2002).

[8] See generally *Gators of Tifton v. Stokes*, 186 Ga. App. 912, 914 (368 SE2d 834) (1988) (no jury question in civil conspiracy case where no evidence that alleged conspirators came to a mutual understanding to accomplish an unlawful end or a lawful end by unlawful means).

ment to Metz on the legal malpractice or breach of fiduciary duty claims.

### Case No. A03A1576

6. Connor contends the trial court erred in denying his motion for summary judgment on Traub's fraud and conspiracy claims. Traub alleges that Connor engaged in a conspiracy with the attorneys to deprive her of her inheritance and that he thereby aided and abetted Washington's fraud.

The record shows that Connor relayed information to Washington and authorized Washington to investigate Traub's debts. Washington represented to Traub that he had no conflict of interest, but then filed a lawsuit against Traub based on information he received from Connor in the course of handling estate matters. A jury could find that Connor encouraged and aided Washington in committing fraud. A jury could find that Connor's actions were motivated by an animus toward Traub, and that he conspired with Washington.

"The essential element of a conspiracy is the common design. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design."[9] Because civil conspiracy is by its very nature a secret endeavor, concert of action, amounting to a conspiracy, is best suited for jury resolution.[10] Whether Connor's actions in passing on information, allowing Washington access to his mother's house, and authorizing Washington to investigate Traub amount to a conspiracy is a jury question.[11] The trial court did not err in refusing to rule that Connor was entitled to summary judgment on the conspiracy and fraud claims.[12]

7. Connor contends the trial court erred in denying his summary judgment motion on Traub's breach of fiduciary duty claim.

An executor of an estate occupies a fiduciary relationship toward parties having an interest in the estate.[13] The relationship between an executor and those he represents normally is deemed confidential and requires the utmost good faith.[14] While Connor was a co-executor

---

[9] (Citation and punctuation omitted.) *Davidson v. Collier*, 104 Ga. App. 546, 550 (122 SE2d 465) (1961).

[10] *Association Services v. Smith*, 249 Ga. App. 629, 637 (8) (549 SE2d 454) (2001).

[11] See id.

[12] See id.; see generally *Potts v. UAP-GA AG CHEM*, 256 Ga. App. 153, 156-157 (1) (567 SE2d 316) (2002).

[13] *Bloodworth v. Bloodworth*, 260 Ga. App. 466, 470-471 (1) (579 SE2d 858) (2003).

[14] Id.; see OCGA § 53-7-1 (a).

of the estate, he owed Traub, an heir under the estate, a fiduciary duty.[15]

Nonetheless, as Connor correctly argues, the probate court has exclusive, original jurisdiction over a claim that an executor has breached a fiduciary duty.[16] Since the proper forum for Traub's grievance is probate court, the trial court lacked jurisdiction over and erred in ruling on Traub's motion for summary judgment on her fiduciary duty claim against Connor as co-executor of the estate. The trial court's ruling on this claim is therefore vacated, and Traub is free to pursue her remedies in probate court.

## Case No. A03A1400

8. In this interlocutory appeal, Connor raises the same issues resolved in his cross-appeal (Case No. A03A1576). This appeal is therefore moot.

*Judgment affirmed in Case Nos. A03A1371 and A03A1429. Judgment affirmed in part and vacated in part in Case No. A03A1576. Appeal dismissed as moot in Case No. A03A1400. Eldridge and Mikell, JJ., concur.*

DECIDED NOVEMBER 17, 2003 —
RECONSIDERATION DENIED DECEMBER 4, 2003.

*Julian H. Toporek,* for Traub.
*Brennan, Harris & Rominger, Richard A. Rominger, Edward R. Stabell III, Hawkins & Parnell, T. Ryan Mock, Jr.,* for Washington et al.
*Barrow & Ballew, Walter W. Ballew III,* for Connor.

---

[15] See *Liner v. North,* 188 Ga. App. 677, 678 (2) (373 SE2d 846) (1988).
[16] *Heath v. Sims,* 242 Ga. App. 691, 693 (1) (531 SE2d 115) (2000).
[1] OCGA § 16-5-40 (a).
[2] OCGA § 16-4-1.
[3] *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).