## A99A0190. TODD v. MARTINEZ PAINT & BODY, INC. et al.

(517 SE2d 844)

ANDREWS, Judge.

William F. Todd sued Martinez Paint & Body Shop, Inc. and its president, Rubert R. Marshall, for the alleged breach of an agreement employing Todd to manage the corporation's paint and body business. In a counterclaim, Martinez Paint & Body alleged that Todd fraudulently induced it to enter into the employment agreement by misrepresenting his qualifications and business reputation. Marshall also counterclaimed alleging that Todd fraudulently altered a lease under which Marshall rented space adjacent to Martinez Paint & Body to an automotive repair business of which Todd was president. The case was tried before a jury. The jury rendered a verdict in favor of Martinez Paint & Body and Marshall on Todd's claim for breach of contract. On Martinez Paint & Body's counterclaim, the jury rendered a verdict in favor of Martinez awarding $100,000 in general damages and $135,000 in punitive damages. After the close of the evidence, the trial court directed a verdict in favor of Todd on Marshall's counterclaim. Todd appeals from the judgment entered on both verdicts in favor of Martinez Paint & Body.

1. Todd claims that his motion for a new trial should have been granted on Martinez Paint & Body's counterclaim against him alleging that he misrepresented his qualifications and business reputation and thereby fraudulently induced it to enter into an agreement employing him as manager of its paint and body business. Todd contends that a merger clause in the employment agreement precluded the fraud claim, and that there was no evidence to show that Martinez Paint & Body justifiably relied on the misrepresentations, an essential element of the fraud claim.

In alleging fraud in the inducement in its counterclaim, Martinez Paint & Body sought rescission of the employment agreement and offered to restore any benefit it had received under the agreement. So contrary to Todd's contention, Martinez Paint & Body was not prevented by the merger clause in the agreement from attempting to prove in its counterclaim that it relied on antecedent oral misrepresentations outside the written agreement. *City Dodge v. Gardner*, 232 Ga. 766, 769-770 (208 SE2d 794) (1974); *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886 (354 SE2d 210) (1987). In order to prove its claim for fraudulent inducement, Martinez Paint & Body was required to show: (1) false representations made by Todd; (2) that Todd knew the representations were false; (3) that Todd intended to deceive Martinez; (4) that Martinez justifiably relied upon the representations; and (5) damages to Martinez proximately caused by the representations. *City Dodge*, 232 Ga. at 769-770, n. 1.

As to the element of justifiable reliance, it is not sufficient to

show that false representations were knowingly made with an intent to deceive — there must also be proof that due care was exercised to discover the fraud. *Charter Med. Mgmt. Co. v. Ware Manor*, 159 Ga. App. 378, 380 (283 SE2d 330) (1981). "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence." (Citation and punctuation omitted.) Id. at 383. Moreover, a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, representations of this nature must be inquired into and examined to ascertain the truth. Id.; *Wilkinson v. Walker*, 143 Ga. App. 838, 839 (240 SE2d 210) (1977).

On appeal, the verdict and judgment in favor of Martinez Paint & Body must be affirmed if there is any evidence to support it, and the evidence must be construed with every inference and presumption in favor of upholding the verdict. *Dept. of Transp. v. Mikell*, 229 Ga. App. 54-55 (493 SE2d 219) (1997).

The counterclaim was based on evidence of representations made by Todd to Marshall. Marshall testified that in August or September 1991, he was in the process of building a paint and body shop and intended to hire Phil Brock to manage it for him. Marshall said Todd approached him saying he had two wreckers for sale. Marshall, who remembered Todd's name because they had gone to school together, began to question Todd about what he had been doing over the years. Todd replied that he lost everything he had in a lawsuit over a business where people had tricked him into signing some papers. Marshall asked him what else he had done, and Todd said he had worked for a company called "Go Between" for several years and that they had let him go. Marshall persisted, asking what happened after that, and Todd related that he had worked for an insurance company for several years and that they had also let him go. Marshall then asked, "[H]ow did you come by these wreckers?" Todd replied that he had gone into the paint and body business about three years ago in Martinez. Marshall asked Todd to tell him what happened in the business. Todd replied that "the first year he was in business he did fine," the second year "he did pretty good," and the third year "his business had really boomed" and "he had outgrown the place." Marshall testified that Todd told him he thereafter went into another paint and body business with a partner for about six months, but he lost all his money because the partner cheated him. Todd told Marshall he needed to sell the wreckers because he needed the money and that he was "looking for a job or something to do." Marshall told Todd he needed to check with Brock to see if he was interested in buying the wreckers and asked Todd to contact him in a few days. After contacting Brock, Marshall not only agreed to buy the

wreckers, but also hired Todd to operate the wreckers.

In support of its fraudulent inducement claim, Martinez Paint & Body produced evidence that the total amount of time Todd had previously been in the paint and body business was not three years but only about nine or ten months.

After Todd had successfully operated the wreckers for about three or four weeks, Marshall testified that Todd approached him and suggested that he let him run the paint and body shop, saying "I got all this experience." Marshall did not initially agree to this suggestion, but after learning that Brock was no longer available to run the paint and body shop, Marshall testified he was getting desperate. At that point, he told Todd: "Well, if you've had three years experience and you know what you're doing. . . . You got any references?" Todd told Marshall to talk to Charlie Allen (Marshall's first cousin) and Bill Bailey. Marshall testified that, after talking with Allen and Bailey around November 1991, he decided "to go into business with [Todd]."

Thereafter, a corporation named Martinez Paint & Body, Inc. was created (owned 75 percent by Marshall and 25 percent by Todd's wife) for the purpose of operating a paint and body business. Marshall knew that Todd's 25 percent ownership was put in the name of Todd's wife because Todd had been sued and had been in a construction business that had some problems. Marshall testified that the name Martinez Paint & Body was selected because it had been the name of a previous paint and body shop run by Todd, and Todd said the business had a good name. On December 20, 1991, Martinez Paint & Body, Inc. entered into an agreement employing Todd as the manager of the corporation's paint and body business. On the same day, Marshall, who owned the building which was being constructed to house the business, leased space in the building to Martinez Paint & Body. The evidence also shows that Marshall and Todd agreed to joint ownership in an automotive repair business to be located in the building.

Marshall testified that around mid-February 1992, he began to have concerns about Todd's ability to manage a paint and body shop because of reports he was getting on Todd's bad reputation and his inability to run a paint and body shop. At this point, the paint and body shop had still not opened for business. Marshall testified that, as a result of his concerns, he and Todd made a new agreement superseding the prior agreement in which he gave all of his interest in the automotive repair business to Todd, and Todd gave him all of the interest in Martinez Paint & Body, Inc. Marshall said it was his belief that, if Todd retained his interest in the paint and body business, "nobody else would touch it," and that it was his intent to "lease [the paint and body shop] to someone else . . . later on if it didn't

work out." Marshall testified that, after a long conversation during which Todd told him, "I ran a business for three years. . . . I know how to run a paint and body shop," Todd "sort of conned me into thinking he was a super nice guy again" and "convinced me that these other people had misinformed me, that [he] really knew how to run a paint and body shop[,] and he had all the experience and qualifications required." Marshall stated that, even though he had acquired knowledge as to Todd's inability to run a paint and body shop and had information that he lacked a good reputation in the business, he had not yet seen him perform.

Thereafter, on March 30, 1992, Martinez Paint & Body, Inc. commenced business and entered into a new employment agreement with Todd in which Todd was employed for a period of 15 years to manage the paint and body business. The employment agreement contained no requirements relating to qualifications, experience or reputation. Marshall testified that he allowed Todd to manage the paint and body business until he decided that he was incapable of running it, and he "had to hire a professional to come in and run it." Marshall also testified that the business had difficulty opening credit accounts in the name of Martinez Paint & Body because that name had a bad credit reputation. After Marshall hired another person on May 15, 1992, to manage the paint and body business, he terminated Todd by letter dated June 5, 1992, stating, among other reasons, that, "You misrepresented your capabilities and reputation to operate a paint and body shop. . . ."

Based on this record, Martinez Paint & Body contended that Todd's statements to Marshall that he had three years prior experience in the paint and body business and that his prior business had a good reputation were false, that it justifiably relied on these statements, and that the statements fraudulently induced it, through Marshall, to enter into the March 30, 1992 agreement employing Todd to manage the paint and body business for 15 years. Todd contended that, even if he made statements which misrepresented his qualifications and reputation, they were expressions of opinion upon which Marshall could not rely, and that Marshall had information the statements were false before he was hired to manage the paint and body business.

Construing the above record in favor of the verdict, we find an absence of any evidence establishing that Martinez Paint & Body, acting through Marshall, justifiably relied on any misrepresentations made by Todd as to his qualifications and reputation in the paint and body business when it entered into the employment agreement on March 30, 1992.

In the initial conversation between Todd and Marshall in August or September 1991, Todd misrepresented his prior experience in the

paint and body business by stating that he had been in that business for three years when, in fact, he had only nine or ten months of prior experience in that business. The record shows that these initial statements were made as part of a conversation in which Todd was trying to sell Marshall two wreckers, and Marshall was inquiring as to what his old high school acquaintance had been doing over the years. At that point Marshall had an agreement with Brock to manage his paint and body business, so this conversation had nothing to do with hiring Todd to manage the business. Todd's overstatements as to his experience in that conversation amounted to no more than "puffing" up his background in response to general inquiries from an old schoolmate. Moreover, in the absence of any evidence that employing Todd to manage the paint and body business was even a consideration at that point, there is no evidence that Todd made the misrepresentations with an intent to fraudulently induce Marshall to hire him for that purpose.

After the deal with Brock fell through, Marshall eventually hired Todd to manage the paint and body business in the December 20, 1991 employment agreement. The only evidence of representations made by Todd made in furtherance of the December 20 employment agreement was the suggestion that Marshall hire him because "I got all this experience." Marshall, who said he was desperate to hire somebody at that point, said, "Well, if you've had three years experience and you know what you're doing. . . . You got any references?" Todd responded by giving him two references, and, after checking out Todd's references, Marshall agreed to hire him to manage the paint and body business.

Nothing in the record up to this point would support a claim that Todd fraudulently induced Marshall to hire him. In fact, counsel for Martinez Paint & Body conceded in closing arguments that the fraudulent inducement claim was based on misrepresentations made by Todd to Marshall immediately prior to the March 30, 1992 employment agreement.

After the December 20 agreement employing Todd to manage Martinez Paint & Body, Marshall began to second-guess his decision to hire Todd because he was getting reports around mid-February 1992 that Todd was incapable of running a paint and body shop and that he had a bad reputation. Marshall already knew that Todd had been involved in prior suits over business relations and had problems in other businesses — problems so severe that Todd's 25 percent ownership interest in Martinez Paint & Body was put in his wife's name. At that point, Martinez Paint & Body had not yet opened for business, and Marshall and Todd agreed to put all of the ownership interest of Martinez Paint & Body into Marshall's name because, as Marshall testified, "nobody else would touch it" as long as Todd had an

interest. Nevertheless, with all this knowledge, Marshall again agreed on March 30, 1992 to employ Todd to manage Martinez Paint & Body, this time for a term of 15 years. Marshall explained that he entered into the March 30 agreement because Todd told him that, "I ran a business for three years. . . . I know how to run a paint and body shop," that Todd "conned" him into thinking he was a nice guy, and "convinced" him that he really had the experience and qualifications to run a paint and body shop. Marshall further stated that he was waiting to see how Todd would perform after the business opened, even though he had been informed that Todd lacked the ability to run a paint and body shop and lacked a good reputation in the business.

This record does not support the conclusion that Marshall justifiably relied on any misrepresentations made by Todd as to his qualifications and reputation when he hired him on behalf of Martinez Paint & Body on March 30. Todd's only arguable misrepresentation of fact was his statement that, "I ran a business for three years," which under the circumstances could reasonably have been interpreted by Marshall to mean that Todd ran a paint and body business for three years. Todd's other statements convincing Marshall he was a nice guy, that he had all the experience and qualifications to run a paint and body shop, and that his reputation was good were mere expressions of opinion upon which Marshall was not entitled to blindly rely. *Charter Med.*, 159 Ga. App. at 383. Rather than relying on these representations, Marshall acquired information that Todd's claims about his qualifications and reputation were false before he employed Todd to manage the paint and body business on March 30. With knowledge that Todd had misrepresented himself, Marshall hired Todd either choosing to believe Todd's expressions of opinion or choosing to take the chance that Todd's performance would prove satisfactory.

Because there was no evidence which could support a conclusion that Martinez Paint & Body justifiably relied on any misrepresentations made by Todd, the fraudulent inducement claim was not proved, and the trial court erred by denying Todd's motion for a new trial on this claim.

2. We find no error in the trial court's denial of Todd's motion for a new trial on his claim that Martinez Paint & Body and Marshall breached the March 30, 1992 employment agreement when he was terminated on June 5, 1992, for dishonesty and incompetence in the performance of his job.

(a) Todd claims he is entitled to a new trial because, over his objection, the trial court erroneously refused to remove certain evidence from the record related to Marshall's counterclaim against him after the trial court had directed a verdict in his favor on the counter-

claim at the close of the evidence. Todd contends that, after the directed verdict was granted, the evidence was irrelevant to any issue in the case, and the trial court's refusal to remove it from the record prejudiced the jury's consideration of the remaining issues.

During the course of the trial, evidence was admitted for the purpose of showing that Todd had fraudulently handled invoices for the automotive repair business which he owned and operated and which was located adjacent to Martinez Paint & Body. The automotive repair business leased space in the building from Marshall, and lease payments were calculated in part as a percentage of the gross business receipts. The invoice evidence was relevant to Marshall's counterclaim against Todd for fraud relating to the lease. However, at the close of the evidence, the trial court granted a directed verdict in favor of Todd on Marshall's counterclaim on the basis that the lease claim had been previously adjudicated in a bankruptcy proceeding filed by Todd on behalf of the automotive repair business.

The trial court did not err by refusing to remove the invoice evidence from the record. Evidence that Todd fraudulently handled invoices in the adjacent automotive repair business was also relevant to the defense of Todd's claim for breach of the employment agreement, which relied on evidence that Todd was terminated because of dishonest behavior as well as incompetence after he was hired as manager of Martinez Paint & Body. *John W. Rooker & Assoc. v. Wilen Mfg. Co.*, 211 Ga. App. 519 (439 SE2d 740) (1993).

(b) Todd also contends he is entitled to a new trial because the trial court erroneously excluded proffered evidence in support of his effort to pierce the corporate veil between Marshall and Martinez Paint & Body, Inc. and hold Marshall personally liable on his claim for breach of the employment agreement. We find no error in the trial court's ruling. In support of the effort to pierce the corporate veil, the trial court allowed Todd to produce evidence that Marshall spent corporate funds for personal purposes, but properly excluded other highly prejudicial evidence related to the alleged purpose of the spending which had little or no relevance. In any event, this issue was rendered moot by the jury's verdict finding no breach of the employment agreement.

3. We need not address Todd's remaining enumerations of error relating to the amount of the damages awarded on the counterclaim for fraudulent inducement brought by Martinez Paint & Body, Inc.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MAY 18, 1999.

*John P. Batson*, for appellant.

*Fleming, Blanchard, Jackson & Durham, James G. Blanchard, Jr., J. David Roper*, for appellees.