A00A0558, A00A0559. SHEFFIELD v. DARBY et al.; and vice versa.
(535 SE2d 776)

MILLER, Judge.

After watching a male horse owned by Terry and Manita Darby perform at a horse show, Ashley Sheffield contacted the Darbys about buying him. The Darbys assured her that the horse had no problems and would make a good show horse for use in competition. In the presence of and in consultation with her father (who raised horses for a business), Sheffield rode the horse and decided to purchase him for $8,500. Within three weeks, Sheffield and her trainer discerned that the horse was lame. Sheffield sued the Darbys for fraud and for breach of express and implied warranties, and the court entered summary judgment in favor of the Darbys on all claims. We affirm, holding that the representations concerning the horse were either true or unactionable statements of opinion (mere "puffing").

1. At the outset, we note that the record in Case No. A00A0558 is incomplete, even though the notice of appeal directs the clerk to omit nothing from the record on appeal. Both parties in their appellate briefs refer repeatedly to testimony from Sheffield's deposition and the exhibits thereto, yet that deposition is not included in the record transmitted to this Court, nor was it even filed in the trial court until a month after this appeal had been docketed. The record has not been supplemented. "[W]e are limited to review only that which is contained in the appellate record,"[1] and thus cannot consider the alleged testimony from the missing deposition.[2] Moreover, it was obviously not before the trial court at the time it entered summary judgment.

[1] *Graham v. Ault*, 266 Ga. 367 (2) (466 SE2d 213) (1996).
[2] See *Young v. YMCA &c.*, 204 Ga. App. 224, 225, n. 1 (419 SE2d 97) (1992).

2. For a fraud action to survive summary judgment, some evidence must support each of the following five elements: a false representation by defendant, scienter, intent to induce plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.[3] No evidence supports either the first or fourth element.

The alleged misrepresentations are found in Sheffield's interrogatory responses:

> The Defendants told the Plaintiff that the horse could be ridden and shown. The Defendants told the Plaintiff that there was no problem with the horse that would prevent him from being shown. The Defendants told the Plaintiff that the horse had participated in competitions in the past successfully.

To prove the falsity of these statements, Sheffield points to affidavits from the horse's previous trainer and owner from whom the Darbys purchased the horse 11 months before selling the horse to Sheffield. These men testified that they told the Darbys the horse was not physically sound enough to be a show horse, that therefore the horse was sold to the Darbys for only $1,000, and that this unsound condition was not discoverable without subjecting the horse to a training regimen.

This opinion evidence about the horse's prior condition and prognosis was completely refuted by the undisputed circumstance that the horse successfully competed in two horse shows before the sale to the Darbys and thereafter successfully competed at the very horse show (placing four times) where Sheffield and her father first observed him and began efforts to purchase him. An athlete with a malformed leg may be told she will never run, but under inspired tutelage may prove all wrong and run in Olympic races. The fact that the horse's previous owner and trainer opined that the horse's particular physical condition (which they never specified) would preclude him from competing successfully is without probative value in the face of the undisputed direct evidence that under the Darbys' training, he competed successfully in full view of Sheffield and her father, which success motivated in part the purchase in question.

Moreover, at Sheffield's request, a veterinarian cursorily examined the horse immediately prior to the sale to her and opined that the horse was not lame, although he did have a limiting condition known as "straight in the pasterns." Sheffield's father knew of this condition at the time Sheffield purchased the horse, for (i) the condition was obvious, (ii) the horse wore special shoes (which was

---

[3] *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989); see OCGA § 51-6-2.

pointed out to the Sheffields), and (iii) the Sheffields observed that the horse was "short-stepping." Sheffield contends that this condition did not cause the lameness but that a disease known as "ringbone" caused it. But Sheffield submitted no evidence that the horse had ringbone or any other ailments that caused the lameness manifested after three weeks under Sheffield's trainer. She simply relies on the previous owner's and trainer's vague affidavits opining without detail that the horse was not physically sound enough to compete successfully. As this prognosis was undisputably disproved, no competent evidence in the record supports the element of a false representation.

Nor does any evidence support a finding of justifiable reliance. A party may not justifiably rely on and assume to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, the party must inquire into and examine such representations to ascertain the truth.[4] Statements that a horse has no problems and would make a good show horse are very similar to the following statements that have been held unactionable as mere opinions, commendations, or puffing: defendant had the experience and qualifications to run a paint and body shop;[5] a building was maintained in good condition and was suitable for use as a chiropractic clinic;[6] a car was "bug-free";[7] a building was sound, of excellent construction, and well maintained;[8] farm machinery was in good condition and would satisfactorily pick cotton;[9] a car was in "A-1 condition";[10] and a car was in good condition and suitable for driving.[11] Just as the court in *U-Haul Co. &c. v. Dillard Paper Co.*[12] found dispositive that the buyer of the building failed to employ a structural engineer to examine the building before purchasing it, so Sheffield's failure to have a comprehensive veterinarian exam of the horse, which exam her father conceded was "something a prudent person would do" and was something he typically did when purchasing a horse, precludes her from claiming justifiable reliance on the Darbys' opinion that the horse had no problems and would make a good show horse.

3. The warranty claims similarly fail. Since the Darbys' state-

---

[4] *Todd v. Martinez Paint & Body*, 238 Ga. App. 128, 129 (1) (517 SE2d 844) (1999).
[5] Id. at 133 (1).
[6] *Morris v. Budd*, 226 Ga. App. 455, 456-457 (1) (486 SE2d 682) (1997).
[7] *Reeb v. Daniels Lincoln-Mercury Co.*, 193 Ga. App. 817, 819 (1) (b) (389 SE2d 367) (1989).
[8] *U-Haul Co. &c. v. Dillard Paper Co.*, 169 Ga. App. 280, 281 (312 SE2d 618) (1983).
[9] *Wilkinson v. Walker*, 143 Ga. App. 838 (1) (240 SE2d 210) (1977).
[10] *Strother Ford, Inc. v. Bullock*, 142 Ga. App. 843, 844 (1) (237 SE2d 208) (1977).
[11] *Randall v. Smith*, 136 Ga. App. 823, 824-825 (222 SE2d 664) (1975).
[12] Supra, 169 Ga. App. at 282.

ments were mere opinions, commendations, or puffing, Sheffield's express warranty claim cannot stand. "[A] statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."[13] With regard to the implied warranty under OCGA § 11-2-315 that the horse would be a good show horse, the undisputed evidence shows that at the time of the sale, this representation was true; thus, no breach of implied warranty can be shown.[14]

4. The above rulings render moot the Darbys' cross-appeal in Case No. A00A0559.

*Judgment affirmed in Case No. A00A0558. Appeal dismissed as moot in Case No. A00A0559. Pope, P. J., and Smith, P. J., concur.*

DECIDED JUNE 12, 2000.

*Webb, Tanner & Powell, Robert J. Wilson*, for appellant.
*L. Katherine Adams, Guy J. Notte*, for appellees.

---

[13] OCGA § 11-2-313 (2); see *Servais v. Philbrick*, 190 Ga. App. 861, 862 (380 SE2d 496) (1989); *Kushner v. McLarty*, 165 Ga. App. 400, 403 (2) (300 SE2d 531) (1983).

[14] See *Jones v. Marcus*, 217 Ga. App. 372, 373 (1) (457 SE2d 271) (1995) (with regard to implied warranties under OCGA § 11-2-314, " 'the defect or condition of the goods relied upon to establish that there has been a breach of warranty must have existed at the time of the sale.' ") (citation omitted).