**NEXT CENTURY COMMUNICATIONS CORP., a Delaware Corporation, Plaintiff–Appellant,**

v.

**U. Bertram ELLIS, Jr., Defendant– Appellee.**

No. 02–14743

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Jan. 14, 2003.

Kevin S. King, Rickman P. Brown, Dietrick, Evans, Scholz & Williams, Atlanta, GA, for Plaintiff–Appellant.

Jessica Perry Corley, Todd R. David, Caroline B. Keller, Alston & Bird, LLP, Atlanta, GA, for Defendant–Appellee.

Before CARNES, MARCUS and WILSON, Circuit Judges.

**PER CURIAM:**

Plaintiff Next Century Communications Corp. ("Next Century") appeals the district court's judgment of dismissal in favor of defendant U. Bertram Ellis, Jr. ("Ellis") on its Georgia state law claims sounding in fraud and negligent misrepresentation. On appeal, Next Century contends that viewed in the light most favorable to it, its complaint states claims on which relief can be granted.

We review *de novo* the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir.1999). The plaintiff's factual allegations are accepted as true. *South Florida Water Mgm't Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996). Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint. *See id.* However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *See id.*

Upon thorough review of the record and careful consideration of the parties' briefs, we find no reversible error and affirm.

This case arises from the precipitous decline in the value of the common stock of iXL Enterprises, Inc. and the resultant pecuniary loss to Next Century. iXL was a publicly traded corporation engaged in the business of providing strategic consulting, including Internet-based solutions, to corporate users of information technology. Net Response, LLC ("Net Response"), which was wholly owned by appellant, developed Internet sites and provided Internet-related services, such as website design and maintenance. On September 22, 1998, Net Response was merged into iXL-DC, a wholly owned subsidiary of iXL. As a consequence of this merger, Next Century received 701,375 shares of Class B common stock in iXL.

On November 19, 1999, seven million shares of iXL stock were offered for sale to the public. In connection with this offering a "lock up" agreement was executed, pursuant to which numerous existing iXL shareholders, including Next Century, consented not to sell their shares during the ensuing 90 days, or until February 17, 2000. On February 13, 2000, as this deadline approached, Ellis, the chairman and CEO of iXL, sent to the shareholders who were parties to the lock up agreement a memorandum that may fairly be characterized as a plea that its recipients not sell their shares immediately upon the expiration of the 90 day period. In this correspondence Ellis expressed his concern that in the event of a massive selloff "our stock could plummet." In an effort to induce shareholders to retain their stake in iXL, he continued: "I think our share price will start to stabilize and then rise as our Company's strong performance continues." Ellis also indicated that he personally did not intend to sell any shares on or soon after February 17, 2000, and that he hoped the memorandum's recipients would follow suit. Despite these pleas, appellee clarified that "I am not telling you cannot sell any of your shares. [sic.] Instead, I am telling you that I personally think that you would be mistaken to sell any of your shares now.... If we all wait at least one more month, we could turn this downdraft around." Ellis also provided instructions for those who wished to sell despite his contrary pleas, and concluded by reiterating that "I can only ask for your individual cooperation. I cannot dictate what you can or cannot do." Next Century avers that Ellis repeated his representation regarding iXL's "strong performance" during a subsequent telephone conversation with Jon Rubin, one of appellant's officers and directors.

Next Century says that based on these representations it decided not to sell its iXL shares on or around February 17, 2000, when those shares each were valued at $40. Instead, it waited to sell until November 7, 2000, when iXL merged with Scient Corporation, at which time the same shares were each valued at $.29, representing a loss of $39.71 per share, or a total loss of $27,851,601.25.

On March 23, 2001, based on this pattern of dealing, Next Century filed a lawsuit in the United States District Court for the Northern District of Georgia, in which it asserted claims sounding in fraud, negligent misrepresentation and breach of fiduciary duty. Appellant argued that despite Ellis's representation regarding iXL's "strong performance," appellee knew that the company actually had been plagued by an inability to complete projects, numerous resultant customer disputes and overstated accounts receivable, revenues, assets and earnings. Moreover, Next Century alleged that Ellis was aware that iXL's share price of $40 had been intentionally and artificially inflated.

However, on October 17, 2001 the district court dismissed each of appellant's claims pursuant to Fed.R.Civ.P. 12(b)(6). Subsequently, on November 14, 2001 Next Century filed an amended complaint in which it asserted only fraud and negligent misrepresentation claims. Ellis responded by again moving for dismissal under Rule 12(b)(6), and on July 30, 2002 the district court granted this second motion to dismiss. The court reasoned that appellant had failed to plead facts constituting justifiable reliance, which is an indispensable element of both fraud and negligent misrepresentation under Georgia law. It is from this latter order that Next Century presently appeals.

On appeal, Next Century contends that contrary to the district court's conclusions, its complaint does state claims for fraud

and negligent misrepresentation. It argues specifically that under Georgia law expressions of opinion can be actionable if the speaker possesses "special knowledge" of their veracity, and that its reliance on Ellis's representations was reasonable because of the close personal relationship between appellant and Ellis, appellee's position within iXL and the confirmation of the substance of Ellis's February 13, 2001 memorandum by iXL press releases and SEC filings. Next Century also emphasizes that reasonableness of its reliance on appellee's statements is a factual question properly resolved by a jury.

Ellis argues in response that (1) appellant's complaint fails to satisfy the heightened pleading standard for fraud set forth in Fed.R.Civ.P. 9(b); (2) appellant has failed to state viable fraud and negligent misrepresentation claims under Georgia law because (a) Ellis merely expressed his opinion as to the likelihood of a future event—*viz.*, that iXL would perform strongly in the future—as opposed to a past or present fact, and (b) as a matter of law appellant could not have justifiably relied on his statements; and (3) appellant failed to raise before the district court— and therefore has waived—its arguments that (a) Ellis's representations fall within a "special knowledge" exception to the nonactionability of statements of opinion, and (b) the reasonableness of Next Century's reliance on appellee's representations is established by the close personal relationship that Ellis enjoyed with Next Century personnel.

■ Under Georgia law, which applies in this diversity action, the tort of fraud consists of five elements: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." *Ades v. Werther*, 256 Ga.App. 8, 567 S.E.2d 340, 343 (2002) (citation omitted). However, as the Georgia Court of Appeals has explained, "[i]t is axiomatic that a false representation made by a defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events." *Fuller v. Perry*, 223 Ga.App. 129, 476 S.E.2d 793, 796 (1996) (citations omitted).

■ In its brief, appellant points to— and, indeed, repeatedly draws our attention to—only one specific[1] statement made by Ellis that falls within this definition.[2] That is his representation in his February 13, 2000 memorandum that: "I think our share price will start to stabilize and then rise as our Company's strong performance continues." Notably, the first half of this sentence plainly is not actionable under a fraud theory, as it is framed as a mere opinion as to future events. *See GCA Strategic Inv. Fund, Ltd. v. Joseph Charles & Assocs., Inc.*, 245 Ga.App. 460, 537 S.E.2d 677, 682 (2000) ("Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common pru-

1. The need for specificity here derives from Fed.R.Civ.P. 9(b). *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir.2002).

2. The district court noted that appellant had alleged that a November 29, 1999 press release and iXL's 1999 and 2000 financial statements also were fraudulent. However, in its brief, Next Century plainly points to these statements as evidence that Ellis was aware of the falsity of his characterization of iXL's performance as "strong" when he so labeled it on February 13, 2001. Despite its reiteration before us that these statements were themselves false, appellant does not raise on appeal separate fraud claims based on these statements.

dence and diligence. Moreover, a party is not justified in relying on and assuming to be true representations consisting of mere expressions of opinion, hope, expectation, puffing, and the like; rather, representations of this nature must be inquired into and examined to ascertain the truth."). Accordingly, the only portion of Ellis's statement that could possibly constitute actionable fraud is his declaration regarding iXL's "strong performance."

■ However, we believe that the sounder interpretation of these words is that they constitute mere "puffing," and that as such appellant Next Century cannot demonstrate the satisfaction of either the first or fourth element of fraud under Georgia law.[3] There are two primary bases for this conclusion. First, Ellis's characterization of iXL's performance as "strong" is not the sort of empirically verifiable statement that can be affirmatively disproven, as it is inherently a label expressive of, and generated by, opinion. As such, although to our knowledge the Georgia courts never have addressed whether the characterization of a company's performance as "strong" constitutes mere puffery, other courts have answered this question affirmatively. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 807, 811 (2d Cir. 1996) (holding that the statement "[w]e expect 1993 to mark another year of strong growth in earnings per share," constituted non-actionable puffery, reasoning that a rational investor would not have relied thereon); *In re ATI Techs., Inc. Secs. Litig.*, 216 F.Supp.2d 418, 433 (E.D.Pa.2002) ("ATI's spin on its historical performance, as setting a 'record in revenue, conferring a "strong start," and giving ATI "market leadership," is puffery.' These self-congratulatory comments would not have significantly altered the mix of information deemed important to a reasonable investor in making its investment decision."); *In re Splash Tech. Holdings, Inc. Secs. Litig.*, 160 F.Supp.2d 1059, 1077 (N.D.Cal.2001) ("[S]tatements which used the words 'healthy,' 'strong,' or 'increased awareness' constitute[ ] vague assessments of past results, on which no reasonable investor would rely."); *see also Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir.1996) (holding in the context of a federal securities fraud claim that "by proffering its conviction that [its] 'business strategies [would] lead to continued prosperity,' NYSEG was in no way insuring that dividend rates would remain constant, or that the stock price would not decline. These statements consist of precisely the type of 'puffery' that this and other circuits have consistently held to be inactionable.") (citations omitted).

■ This conclusion is perfectly consistent with the Georgia courts' explanation of the concept of puffery. *See Sheffield v. Darby*, 244 Ga.App. 437, 535 S.E.2d 776, 779 (2000) (collecting examples). Indeed, as the Georgia Court of Appeals has said in a slightly different substantive context, "[m]ere 'puffing' does not constitute

---

**3.** It seems to us evident that these prongs of the fraud inquiry overlap to a substantial extent. If a fraud claim is based on a mere statement of opinion or expectation, then the court is not presented with a representation as to an empirically verifiable truth such as would satisfy the first prong. *See King v. Codisco, Inc.*, 217 Ga.App. 704, 458 S.E.2d 881, 882 (1995) (holding a promise to give a customer the "lowest" price of any customer in a given geographic area to satisfy the first element of the fraud inquiry because "it is definite, capable of exact proof, and not a mere expression of opinion"). Similarly, as explained in *GCA Strategic Inv. Fund*, a party cannot justifiably rely on a statement—as it must do in order to satisfy the fourth fraud element—that is not empirically verifiable, e.g., an expression of opinion or "puffing." *See* 537 S.E.2d at 682.

legal fraud, the same not being calculated to really mislead a purchaser, especially when he is afforded a full opportunity to form his own independent opinion as to the advisability of becoming a purchaser...." *Marler v. Dancing Water Lakes, Inc.*, 167 Ga.App. 99, 305 S.E.2d 876, 878 (1983) (citation omitted).[4]

The second basis for our conclusion that Ellis's statement is not actionable under Georgia law is especially relevant to the reasonable reliance element of the prima facie showing of fraud. Specifically, when considered in the context of the February 13, 2001 memorandum as a whole, it is perfectly plain that appellee's comment regarding iXL's "strong performance" cannot possibly have induced the reliance of any reasonable investor, especially one possessing the financial sophistication of Next Century. Indeed, this question is not sufficiently close to warrant presentation to a jury. *See generally Tri–Eastern,* 342 S.E.2d at 349; *see also San Leandro,*

75 F.3d at 807, 811 (holding that the defendant's statement that "[w]e expect 1993 to mark another year of strong growth in earnings per share" is "puffery" that "cannot have misled a reasonable investor ..."); *In re Eng'g Animation Secs. Litig.,* 110 F.Supp.2d 1183, 1195 (S.D.Iowa 2000) (labeling as mere puffery a CFO's statement that his company was "in strong financial condition and our business prospects remain excellent"); *Simon v. Am. Power Conversion Corp.,* 945 F.Supp. 416, 428 (D.R.I.1996) (labeling as puffery a CEO's statement that "we are gaining market share, we are gaining momentum, and our revenues are strong").

Ellis's memorandum was replete with caveats that iXL's stock price had been on a "downward" track, and that the hopeful tone of the correspondence was a product of Ellis's personal beliefs and opinions. Moreover, it not only clarified in the most explicit conceivable terms that Next Century was entitled to sell its shares, but it

**4.** It is to the issue of whether Next Century actually enjoyed such an opportunity to form its "own independent opinion" that appellant's "special knowledge" argument is directed. Under Georgia law, as explained above, reliance on puffing or mere expressions of opinion generally is unjustifiable as a matter of law; a commercial actor is required to investigate the veracity of such statements before he may reasonably relied thereon. *See Wilkinson v. Walker,* 143 Ga.App. 838, 240 S.E.2d 210, 211 (1977) (citations omitted). However, it is true, as Next Century notes, that expressions of opinion or aspiration can become actionable where the speaker has "special knowledge" of the matters about which he is speaking and the listener is ignorant of the same. *See Tri–Eastern Petroleum Corp. v. Glenn's Super Gas, Inc.,* 178 Ga.App. 144, 342 S.E.2d 346, 349 (1986). However, as *Tri–Eastern* makes clear, even where this latter situation is manifest the listener is not completely relieved of the obligation to investigate the veracity of the representation. In fact, in that case the court held the statements in question not to be actionable based on the plaintiff's absolute failure to attempt to ascer-

tain the veracity of the assertions in question. *See id.* In this case, although Next Century repeatedly claims in its amended complaint that Ellis was aware of the genuine nature of iXL's financial condition and that it was not privy to this information, it never asserts that it even attempted to investigate how strong the company's performance had been. As such, even assuming the "special knowledge" exception to the unactionability of statements of opinion to be otherwise applicable in this case—and further assuming appellant's argument as to the applicability of this exception to be properly before us—the exception does not resuscitate Next Century's claims. As in *Tri–Eastern,* this is so despite the fact that "[o]rdinarily, questions of ... whether the plaintiff could have protected himself by the exercise of proper diligence are ... questions for the jury." *Id.*

We also note that Next Century has directed us to no holding of the Georgia courts indicating that otherwise non-actionable puffery is rendered actionable by the existence of a personal relationship between the speaker and listener.

also set forth the procedure to be followed if appellant wished to sell despite Ellis's contrary pleas. Finally, towards the end of the memorandum appellee reiterated that "I can only ask for your individual cooperation. I cannot dictate what you can or cannot do. However, it is times like this where we need to act like a Team. Let's hang together and make the daytraders eat crow." Quite simply, we do not believe that Next Century could justifiably have relied on Ellis's statement that iXL's performance had been "strong."

 Appellant's negligent misrepresentation claim fails for largely the same reason. Under Georgia law, the tort of negligent misrepresentation consists of 3 elements: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance. *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 479 S.E.2d 727, 729 (1997). As the Georgia courts have recognized, the reasonable reliance that is required to state a negligent misrepresentation claim is equivalent to that needed in the fraud context. *See Paul v. Destito*, 250 Ga.App. 631, 550 S.E.2d 739, 745 (2001); *Artzner v. A & A Exterminators, Inc.*, 242 Ga.App. 766, 531 S.E.2d 200, 205 (2000) ("As the same principles apply to both fraud and negligent misrepresentation, justifiable reliance is . . . an essential element of [both claims]."). As explained, *supra,* Next Century cannot justifiably have relied on Ellis's statement regarding iXL's "strong performance." This conclusion is equally fatal to appellant's negligent misrepresentation claim as it is to that sounding in fraud.

Because Next Century is not entitled to relief even when its claims are viewed in the light most favorable to it, the district court correctly granted Ellis's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Accordingly, we affirm.

AFFIRMED.