[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13595

_____

D.C. Docket Nos. 9:14-cv-80566-WPD; 9:14-cv-80862-WPD

9:14-cv-80566-WPD

IBEW LOCAL 595 PENSION AND MONEY PURCHASE PENSION PLANS,
MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM,
KBC ASSET MANAGEMENT NV,

Plaintiffs - Appellants,

PHILIP HENNINGSEN,
individually and on behalf of all others similarly situated, et al.,

Plaintiffs,

versus

THE ADT CORPORATION,
NAREN GURSAHANEY,
KEITH A. MEISTER,
CORVEX MANAGEMENT LP,

Defendants - Appellees,

_____

9:14-cv-80862-WPD

SARATOGA ADVANTAGE TRUST LARGE CAPITALIZATION
VALUE PORTFOLIO,
individually and on behalf of all others similarly situated,

                                        Plaintiff,

versus

ADT CORPORATION,
NAREN GURSAHANEY,
KEITH A. MEISTER, et al.,

                                        Defendants.

                    _____

            Appeal from the United States District Court
               for the Southern District of Florida
                    _____

                    (September 7, 2016)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and STORY,[*]
District Judge.

PER CURIAM:

        This appeal presents the question whether The ADT Corporation and its

Chief Executive Officer, Naren Gursahaney (collectively, the "ADT Defendants"),

and Corvex Management LP and its founder and managing director, Keith A.

Meister (collectively, the "Corvex Defendants"), violated securities laws when

_____

        [*] Honorable Richard W. Story, United States District Judge for the Northern District of
Georgia, sitting by designation.

                                        2

ADT failed to disclose its subjective motivation for adopting a program to repurchase its stock.  Appellants, a class of ADT investors (the "Shareholders"), also alleged that the ADT Defendants made material misrepresentations by failing to disclose the effect of increased competition on ADT's financial performance and that the ADT and Corvex Defendants engaged in deceptive conduct in executing the stock repurchase plan.  We hold that the Shareholders failed to state a claim under the securities laws.  Accordingly, we affirm the district court's dismissal of the Shareholders' complaint.

## I. BACKGROUND

### A. ADT's Share Repurchase Program

The following allegations are drawn from the Shareholders' amended complaint.[1]  Corvex, a hedge fund, announced in October 2012 that it had acquired over five percent of the stock in ADT.  Corvex's founder and managing director, Keith Meister, stated that he believed ADT's stock was undervalued and should be valued at between $61 and $83 per share.  He criticized ADT's management for taking a conservative approach to debt and argued that the company should increase its debt to repurchase outstanding shares and increase its stock price.

---

[1] At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiffs, here, the Shareholders. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012).

Meister immediately sought to take an active role in attempting to influence ADT's management, especially with respect to the company's corporate financing. He met with ADT board members and management in November 2012 and informed them that ADT should incur additional debt to raise the stock price. At this meeting, Meister also expressed interest in joining ADT's board. The next day, ADT announced that it planned to repurchase $2 billion of its own common stock over the next three years. ADT did not mention that Corvex and Meister had pushed for the repurchase plan.

In December 2012, Meister was appointed to ADT's board. Before appointing Meister, the board discussed that he and Corvex were pressuring ADT to acquire more debt to repurchase shares. Board members also expressed concern that if they failed to offer Meister a board position, Corvex would try to replace them with new directors by seeking a shareholder vote at ADT's annual shareholders' meeting. Advisors informed the board that if they did not agree to the repurchase plan and take on more debt, Corvex may try to remove them from the board.

After Meister joined the board, ADT continued to borrow additional money to repurchase more of its stock. By April 2013, ADT had borrowed more than $700 million and used the funds to repurchase shares. In July 2013, ADT announced its plans to increase its borrowing to repurchase even more shares. In

4

response to the company's increased borrowing, credit rating agencies downgraded ADT's credit rating and the share price dropped almost five percent to around $40 per share.

Despite this downturn, the Corvex Defendants intensified their push for ADT to take on more debt and repurchase its shares on an even more accelerated time frame. Corvex threatened the board that if it did not go along with the plan, Corvex would run a competing slate of directors at the next shareholders' meeting. Corvex also indicated that if the board acquiesced, Meister would agree to leave the board. The board then authorized the company to borrow even more money to repurchase more shares.

In late November 2013, Corvex decided to sell off its ADT stock. Corvex sold its shares to ADT at a price of $44.01 per share. Meister resigned from the board. When ADT disclosed that it was repurchasing Corvex's shares and Meister was leaving the board, the market reacted unfavorably. On the day of the announcement the stock price dropped nearly six percent to $41.46 per share—far below Meister's estimate a year earlier that the stock should be trading between $61 and $83. Over the next few months, ADT's stock price continued to drop, and by February 2014, the stock was trading for less than $29 per share.

## B. Procedural Background

Following the drop in ADT's share price, shareholders and institutional investors filed complaints in the district court alleging violations of federal securities laws.  Philip Henningsen and Saratoga Advantage Trust Large Capitalization Value Portfolio each filed class action complaints in the Southern District of Florida.  The district court consolidated these cases and appointed IBEW Local 595 Pension and Money Purchase Pension Plans, Macomb County Employees' Retirement System, and KBC Asset Management NV as the lead plaintiffs.  The lead plaintiffs sought to represent a class consisting of all persons who purchased ADT common stock from November 27, 2012 through January 29, 2014.

In their amended complaint, the Shareholders made four claims under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 against the ADT and Corvex Defendants.  With respect to the ADT Defendants, the Shareholders alleged that they misrepresented and failed to disclose the effect of competition on key ADT metrics, misrepresented and failed to disclose the impact of ADT's customer service problems, misrepresented and failed to disclose ADT's alleged plans to increase its leverage, and failed to disclose the board's motive for engaging in the share repurchase plan.  With respect to the ADT and Corvex Defendants, the

6

Shareholders also alleged securities fraud based on a deceptive scheme arising out of ADT's adoption of the share repurchase program.

The ADT and Corvex Defendants moved to dismiss. The district court granted the motions and dismissed the complaint in its entirety. The district court held that the Shareholders' misrepresentation claims against the ADT Defendants failed because precedent barred the claims, the complaint lacked sufficient allegations that the misrepresentations or omissions were false or misleading, and the complaint insufficiently supported an inference of scienter as to all the defendants. The court also concluded that the Shareholders failed to state a claim for scheme liability because they failed to allege that the defendants engaged in deceptive conduct beyond the alleged misrepresentations and omissions. In its order, the district court granted the Shareholders leave to file an amended complaint, but they declined to do so. The court then dismissed the complaint with prejudice. The Shareholders now appeal.[2]

## II. STANDARD OF REVIEW

"We review *de novo* the district court's dismissal of a case under Federal Rule of Civil Procedure 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Brophy v.*

---

[2] The Shareholders did not appeal the district court's dismissal of the claims against defendant Kathryn Mikells, ADT's former Chief Financial Officer, or the claims based on misrepresentations regarding the customer service problems and the plans to increase leverage.

*Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015) (internal quotation marks omitted and alterations adopted).  To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, requires a complaint alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).

### III. DISCUSSION

The Shareholders argue on appeal that the ADT and Corvex Defendants are liable under the securities laws because (1) ADT misrepresented and failed to disclose the board's motivation for approving the stock repurchase program,

8

(2) ADT misrepresented and failed to disclose the impact of competition on the company's performance, and (3) ADT and Corvex engaged in deceptive conduct in executing the stock repurchase plan.  To plead securities fraud in violation of § 10(b) or Rule 10b-5, a plaintiff must allege the following elements:  "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss." *Brophy*, 781 F.3d at 1301-02 (internal quotation marks omitted).  To withstand a motion to dismiss, a claim brought under § 10(b) or Rule 10b-5 must satisfy (1) the federal notice pleading requirements, (2) the requirement in Federal Rule of Civil Procedure 9(b) that fraud be pled with particularity, and (3) the additional pleading requirements imposed by the PSLRA.  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

## A. Misrepresentation of Motive Claim

The Shareholders argue that the ADT Defendants violated the securities laws by failing to disclose that the board's true motive for engaging in the stock repurchase program and taking on more debt was to appease Meister and Corvex so that they would not seize control of the company or remove directors from the board.  The district court held that under binding precedent ADT was not required

to disclose its motives.  *See Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 610 (5th Cir. 1979).[3]  We agree with the district court.[4]

In *Alabama Farm*, shareholders brought a derivative action under § 10(b) and Rule 10b-5, claiming that they were deceived by the nondisclosure of the true motive behind the defendants' stock repurchase program—to protect management's control over the corporation.  *Id.* at 608.  In affirming the grant of summary judgment to the defendants, the Court held that a company does not engage in "deception" under the meaning of the securities laws by failing "to disclose [its] motives in entering a transaction."[5]  *Id.* at 610.  The Court explained, "Section 10(b) and Rule 10b-5 were promulgated to prevent fraudulent practices in securities trading and trading on inside information.  They were not intended to require, under normal circumstances, the disclosure of an individual's motives or subjective beliefs, or his deductions reached from publicly available information."  *Id.* (citation omitted).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before the close of business on September 30, 1981.

[4] The district court also held in the alternative that the Shareholders' allegations regarding a hidden entrenchment motive were conclusory and speculative.  Because we hold that the nondisclosure of an entrenchment motive is not actionable, we need not address whether the Shareholders sufficiently pled that a hidden entrenchment motive existed in this case.

[5] *See* 15 U.S.C. § 78j(b) (prohibiting the use of a "manipulative or deceptive device" in connection with the purchase or sale of securities).

*Alabama Farm* forecloses the Shareholders' claim that the ADT Defendants committed securities fraud by failing to disclose the board's alleged entrenchment motive for the stock repurchase plan. The Shareholders do not contend that the ADT Defendants deceived them by failing to disclose material financial or other information concerning the nature, scope, or mechanics of the stock repurchase transaction. Instead, they alleged that the ADT Defendants misled investors by having one motive, while offering up another, for participating in an otherwise accurately-disclosed stock repurchase plan. "When the nature and scope of a transaction are clear," it is unnecessary for a company to disclose the purpose of the transaction. *Id.* at 611. None of the Shareholders' arguments to the contrary is persuasive.

First, the Shareholders assert that *Alabama Farm* is inapplicable because in that case the Court examined whether the company's actions involved "any manipulative or deceptive device or contrivance" rather than nondisclosure or misrepresentation. *Id.* at 608. In their attempt to distinguish *Alabama Farm*, the Shareholders emphasize a distinction without a difference. Scheme liability is but one type of "manipulative or deceptive device" under § 10(b); misrepresentation and nondisclosure are another. *See* 15 U.S.C. § 78j(b); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n. 29 (3d Cir. 2011) ("We refer to claims under Rule 10b-5(a) and (c) as 'scheme liability claims' because they make deceptive conduct

11

actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements."), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013).[6]  Similarly to this case, in *Alabama Farm*, the plaintiffs "alleged that the individual defendants' conduct was fraudulent because they did not disclose to the Board or the shareholders . . . their real motive for adopting the repurchase program, which was allegedly to retain their position of control over AMFI."  606 F.2d at 608.  Thus, the Court in *Alabama Farm* had occasion to and did address whether "the failure of a controlling stockholder or corporate official to disclose his motives in entering a transaction constitutes the 'deception' requisite for a 10b-5 violation."  *Id.* at 610.  The Court answered the question in the negative.  *Id.*

Second, the Shareholders contend that *Alabama Farm* is no longer good law after the Supreme Court eschewed bright-line tests for materiality in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011).  In *Basic*, the Supreme Court concluded that adopting a bright-line test for materiality within the context of merger negotiations could "artificially exclud[e]" information that "would otherwise be considered significant to the trading decision of a reasonable investor."  485 U.S. at 236.  Similarly, the

---

[6] Although this citation only pertains to Rule 10b-5, actions that violate Rule 10b-5 automatically violate § 10(b) as well.  *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) ("Rule 10b-5 encompasses only conduct already prohibited by § 10(b).").

12

bright-line rule regarding the materiality of adverse event reports for pharmaceutical products proposed and rejected in *Matrixx* could have narrowed the information about the products' risks that would be available to investors. 563 U.S. at 40.  The Supreme Court repeatedly has expressed concern that a bright-line test for materiality could allow companies to omit information that "might have been considered important by a reasonable shareholder who was in the process of deciding how to vote."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 447 (1976).  But even considering *Basic* and *Matrixx*, we hold that the district court correctly dismissed the Shareholders' complaint because no reasonable shareholder would have considered the alleged omissions here—regarding the ADT Defendants' motivation for adopting a stock repurchase program and acquiring debt—significant to the decision about whether to trade ADT securities given the other disclosures regarding the stock repurchase program and ADT's corporate financing.

Third, the Shareholders argue that even if a board's motivation ordinarily need not be disclosed, here, the ADT Defendants were obligated to disclose the board's motivation after speaking positively about the share repurchase program. They claim that the ADT Defendants misled their investors by calling the plan "thoughtful," "effective," and "optimal," among other descriptors.  But such puffery is nonactionable.  *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d

13

1023, 1029 (11th Cir. 2003) (characterizing a comment regarding "strong performance" as nonactionable mere puffery).

For these reasons and those discussed in more detail in the district court's thorough and well-reasoned order, we agree that the Shareholders failed to state a claim that the ADT Defendants illegally misled their investors by failing to disclose the board's alleged entrenchment motive.

## B. Misrepresentation of Impact of Competition Claim

The Shareholders further argue that the ADT Defendants materially misrepresented the impact of competition on ADT's key financial metrics.  The Shareholders draw a fine line: they do not argue that the ADT Defendants denied that competition existed, but rather that they failed to adequately disclose the magnitude of the impact competition had on ADT's customer attrition, subscriber acquisition costs, and bottom line.

A statement is a "misrepresentation" for purposes of § 10(b) and Rule 10b-5 if "in the light of the facts existing at the time of the [statement] . . . [a] reasonable investor, in the exercise of due care, would have been misled by it." *FindWhat*, 658 F.3d at 1305 (alterations in original) (internal quotation marks omitted). "Thus, the appropriate primary inquiry is into the meaning of the statement to the reasonable investor and its relationship to truth." *Id.* (internal quotation marks omitted).

14

The complaint failed to state a plausible claim of material misrepresentation based on misleading statements because it gave the court no indication *by how much* the company minimized the influence of competition, and thus no way to judge the misrepresentations' impact on investors.  Rather than stating, with particularity, "the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1)(B), the complaint presented reasons that are vague and "not particularized as required by the PSLRA." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008).  For example, the complaint alleged that the ADT Defendants "led the market to believe that [competition] was having little to no impact on their business model" when Gursahaney made statements such as, "[W]e attribute less than 10% of our total customer disconnects to lost competition . . . . We continue to closely monitor the impact . . . , but to date nothing has really changed."  Am. Compl. ¶ 48, Doc. 60 (alterations in original).[7]  Nothing in the complaint, however, explained how that statement (or similar statements) would have misled investors, or how it painted a misleading picture of the competitive pressures facing ADT's bottom line.

Without more information as to the impact competition actually had on ADT's finances and its investors, we are left to engage in guesswork.  Even under notice pleading, "[f]actual allegations must be enough to raise a right to relief

---

[7] "Doc." refers to the docket entry in the district court record in this case.

15

above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, the complaint's allegations were insufficient to state a claim for material misrepresentation.

## C. Scheme Liability Claim

The Shareholders alleged a claim against the ADT and Corvex Defendants based on scheme liability—that is, liability based on deceptive conduct—via the stock repurchase plan.  The crux of their argument is that the ADT and Corvex Defendants, in addition to hiding the motive for the stock repurchase plan, participated in deceptive conduct through the stock repurchase plan itself.  We agree with the district court that the Shareholders failed to plead deceptive conduct sufficient to sustain a scheme liability claim.

Scheme liability occurs when a defendant employs "any device, scheme, or artifice to defraud," 17 C.F.R. § 240.10b-5(a) (Rule 10b-5(a)), or "any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person," 17 C.F.R. § 240.10b-5(c) (Rule 10b-5(c)).  A scheme liability claim is different and separate from a nondisclosure claim.  *See In re DVI, Inc. Sec. Litig.*, 639 F.3d at 643 n. 29.  Because "[c]onduct itself can be deceptive," a defendant can be liable under § 10(b) and Rule 10b-5 for deceptive conduct absent a misstatement or omission.  *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008).  Misleading statements and omissions only create scheme liability in conjunction with "conduct beyond those misrepresentations or

16

omissions." *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011).

The Shareholders contend the stock repurchase plan, apart from the misstatements and omissions about ADT's motivation for the plan, was deceptive conduct under *Alabama Farm*.  In *Alabama Farm*, the Court concluded that it is possible for a stock repurchase plan itself to be deceptive conduct.  606 F.2d at 611.  The deceptive conduct alleged in *Alabama Farm* was as follows:

> Alabama Farm alleged that the repurchase plan was a part of a "plan or scheme to perpetuate and maintain . . . control of American Fidelity by manipulating the market in (AMFI's) Shares and artificially inflating the market price of the Shares . . . in order to discourage other shareholders or nonshareholders from purchasing Shares or attempting to gain control of" AMFI.

*Id.* (alterations in original).  That is, the company allegedly designed the repurchase plan to increase the share price so that no one else could afford to buy the shares and take over the company.  The Court considered the plan deceptive conduct because it altered the market for the shares in a misleading manner.

The Shareholders' allegations about ADT's share repurchase plan are different from the scheme alleged in *Alabama Farm*.  The Shareholders here did not allege that the stock repurchase plan "unduly affect[ed] the market" so that the board members could keep their jobs.  *Id.* at 613.  They do not contend that the plan was designed to deter investment.  *See id.*  Nor do they argue that ADT

17

"omitted to disclose the inflationary effect [its] repurchases would have on the market price of its outstanding shares." *Id.* at 611.

Instead, the Shareholders' claim concerns the companies' undisclosed motivations: the ADT Defendants allegedly initiated the stock repurchase plan "not because the repurchase program was in the best interests of ADT's investors, but because that is what the Corvex defendants, ADT's largest shareholder, wanted. . . . [T]he share repurchase plan was deceptive when the true purpose all along was a defensive strategy of self-preservation." Appellants' Br. at 44. We see no difference between this and the material misstatement and omission claim based on the ADT Defendants' failure to disclose the board's motive. The premise underlying the Shareholders' allegations is that the failure to disclose the motivations behind the transaction is what made the stock repurchase plan deceptive, not that the stock repurchase plan itself was deceptive. As discussed above, this line of argument is foreclosed by *Alabama Farm. See* 606 F.2d at 610.

## IV. CONCLUSION

For the reasons explained above and in the district court's thorough and well-reasoned order, we affirm the district court's dismissal of the complaint.

**AFFIRMED.**

18